**MOTOROLA INC., Plaintiff,**

v.

**PC–TEL, INC., and Altocom Inc., Defendants.**

**Pc–Tel, Inc., Counter–Claimant,**

v.

**Motorola Inc., Counter–Defendant.**

**Civil Action No. 98–598–GMS.**

United States District Court, D. Delaware.

July 12, 1999.

Jack B. Blumenfeld of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, of counsel: Herbert F. Schwartz, Robert C. Morgan, Mark H. Bloomberg and Eric D. Kirsch, of Fish & Neave, New York City; Thomas G. Berry, of Motorola, Inc., Schaumburg, IL; and Cynthia P. Abbott, of Motorola, Inc., Libertyville, IL, Attorneys for Plaintiff and Counter–Defendant Motorola, Inc.

Edward M. McNally, of Morris, James, Hitchens & Williams, Wilmington, DE, of counsel: Alan H. MacPherson, Edward V. Anderson, Edward C. Kwok, Steven M. Levitan and Craig J. Bristol, of Skjerven, Morrill, MacPherson, Franklin & Friel, San Jose, CA, Attorneys for Defendant and Counter–Claimant PC–Tel, Inc.

William J. Marsden, Jr. and Joanne Ceballos, of Potter, Anderson & Corroon, Wilmington, DE, of counsel: Stephen J. Rosenman, of Howrey & Simon, Menlo Park, CA; and Joseph P. Lavelle and Alan M. Fisch, of Howrey & Simon, Washington, DC, Attorneys for Defendant Alto-Com, Inc.

## MEMORANDUM OPINION

SLEET, District Judge.

## I. INTRODUCTION.

On November 12, 1998, AltoCom, Inc. ("AltoCom"), one of the defendants in this patent infringement action, filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer this case to the Northern District of California. *See*

Fed.R.Civ.P. 12(b)(2) (1998); 28 U.S.C. § 1404(a) (1994). The bases for these motions are essentially that (1) AltoCom's purposeful contacts with the forum state, Delaware, are insufficient to subject it to the exercise of personal jurisdiction and (2) because Delaware is not the "home turf" of the plaintiff, Motorola, Inc. ("Motorola"), the provisions of the federal venue statute require the transfer of this matter to a more convenient forum—specifically, the Northern District of California.

Because the court concludes that exercising personal jurisdiction over the defendant in this instance comports with traditional notions of fair play and substantial justice as required by the Due Process Clause [1] and that AltoCom falls within the reach of Delaware's long-arm statute, Del. Code.Ann. tit. 10, § 3104(c) (1998), the court will deny AltoCom's motion to dismiss. Further, because the "balance of convenience" tips in favor of Motorola, the court will also deny AltoCom's motion to transfer.

## II. BACKGROUND.

In an action filed in the District of Massachusetts in September 1998, Motorola accused AltoCom and PC–Tel, Inc. ("PC–Tel") of patent infringement. Twelve days after Motorola's Massachusetts filing, PC–

Tel elected to file an infringement action against Motorola in the District of Delaware. Motorola then obtained a dismissal of the Massachusetts action and, about six weeks later, brought the instant lawsuit against PC–Tel and AltoCom here in Delaware.

Both Motorola and PC–Tel are Delaware corporations. The two cases which they filed here involve essentially the same software modem or "softmodem" technology. While neither company is headquartered here,[2] each has demonstrated a desire to litigate the disputes over this technology in this district.[3] AltoCom, however, would prefer to be elsewhere. Portraying itself as a "very small software company" which is incorporated in California and headquartered in Silicon Valley,[4] AltoCom emphasizes its ties to the Northern District of that state.

According to AltoCom, it has developed software which—when incorporated into computers, fax machines, video telephones, personal digital assistants, and a variety of other communication devices—reduces the "cost, size, power consumption and complexity" of these products, enabling them to run more efficiently. AltoCom says that it "licenses" and Motorola says that AltoCom "sells" these softmodems to the companies which manufacture these prod-

---

1. Emphasizing the federal nature of patent law, the Federal Circuit has traditionally focused its due process analysis under the lens of the Fifth, instead of the Fourteenth, Amendment. See, e.g., *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1358 n. * (Fed.Cir.1998) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed.Cir. 1995)). However, as the *Red Wing Shoe* court acknowledged, this distinction is largely an academic one, since, either way, the analysis takes into account the traditional minimum contacts inquiry. *See id.* (referring to *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

2. Motorola is based in Illinois, and PC–Tel is located in northern California.

3. Rather than file a counterclaim against Motorola's Massachusetts filing, PC–Tel elected to sue Motorola regarding its modem technol-

ogy in Delaware. And, rather than move to transfer its earlier action to Delaware, Motorola, in effect, refiled its Massachusetts lawsuit here.

4. In particular, AltoCom describes itself as a company with only twelve employees occupying an office which is "assuredly" smaller than "this Court's chambers," with "annual revenues of under $7 million," and "assets of only $5 million." Motorola, however, portrays AltoCom as a "multi-million dollar corporation ... [with] cash or equivalents of $14.88 million."

Regardless of these characterizations, the court recognizes that, compared to Motorola, AltoCom is, indeed, a "very" small company. In fact, according to AltoCom, Motorola is a company with revenues in excess of $29 billion and 150,000 employees—a characterization which Motorola does not contest.

ucts. According to AltoCom, it offers no "products" for sale but merely licenses its softmodems and from that activity "it derives its revenues" in the form of "licensing fees and running royalties."

Whichever verb one adopts, AltoCom does not (and, it seems, cannot) contest the fact that its softmodems are integrated into a variety of consumer electronic products which are manufactured by well-known multi-national corporations like Compaq, Phillips, Samsung, Sharp, Sony, and the like. These goods are then put into world-wide distribution networks which place them for sale in equally well-known retail stores such as Caldor, Circuit City, CompUSA, Office–Max, Sears, Service Merchandise, and others—all which have outlets in Delaware.[5] These products are advertised extensively nationwide and in Delaware through various sources such as newspapers of general circulation, magazines directed at retail consumers of electronic products, and other types of catalogs.

AltoCom, however, argues that it has never had any direct contact with Delaware. Specifically, it notes that since its licenses require shipment of the software code to its softmodems to the licensee's principal place of business and since none of its eleven U.S. based licensees are head-

quartered in Delaware, it has never shipped any its softmodems directly to Delaware.[6] In addition, AltoCom claims that it has never advertised its softmodems here, conducted any of its business here, or maintained any of its assets here.

Nevertheless, AltoCom does maintain an interactive website from which end users may download certain modem control commands to their computers to enable them to perform various functions with their AltoCom softmodems. From this website, AltoCom customers may order a product which allows them to test AltoCom's softmodems. Also, those who purchase consumer products containing AltoCom's softmodems may obtain customer support directly from AltoCom over the telephone and the Internet. Delaware residents apparently have utilized these features of AltoCom's support network.

Mindful of these facts, the court will turn to a discussion of the law governing AltoCom's jurisdiction and venue challenges.

## III.  DISCUSSION.

### A.  Jurisdiction.

The essence of AltoCom's argument is that since it has not purposefully directed its activities at Delaware residents, the assertion of personal jurisdiction by the

---

5. Thus, the "licensing fees and running royalties" from which AltoCom "derives its revenues" appear to be based upon the sale to *end users* of products containing its softmodems. As Section 6.1.2 of AltoCom's general "Software Modem License Agreement" provides, the "Licensee shall pay to AltoCom ... royalties on each Port that the Software enables in a Shipped End User Product ..." The agreement defines the word "shipped" as meaning "an End User Product that Licensee or any of its Sublicensees place into its End User distribution channel or uses as an End User."

Although not expressly stated in the form agreement, logically, the so-called "End User distribution channel" contemplates sale to retail consumers, *including consumers in Delaware*, of "Shipped End User Product[s]" through retail outlets such as those mentioned above.

6. AltoCom, however, acknowledges that "a few [of these licensees] are incorporated under Delaware law." Whether called, "customers" or "licensees," approximately one-half of these companies seem to be located in northern California. However, as Motorola correctly points out, the balance are not. For example, three are located in Maryland and New Jersey, and many more are located overseas.

Finally, AltoCom states that some of these companies or, more accurately, their executives may be valuable "likely" witnesses in this case. However, AltoCom only implies that it *may* call some of these individuals at trial. Moreover, the company does not identify any of the individuals by name; nor does it provide any specific information concerning the substance of their anticipated testimony, stating only that it would pertain to the issues of "liability and damages."

courts of this forum over AltoCom would violate the Due Process Clause. AltoCom further contends that its activities do not bring it within reach of Delaware's long-arm statute. While AltoCom correctly frames the inquiry the court must make, *see, e.g., Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F.Supp.2d 690, 694 (D.Del. 1998), the court reaches the exact opposite conclusion. *Cf. Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed.Cir.1994) (finding that the exercise of personal jurisdiction was proper in a case where the "infringer's sole contact with the forum resulted from indirect shipments through the stream of commerce").

### 1. Due process.

The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that this party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.'" *See International Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *See Beverly Hills Fan*, 21 F.3d at 1568.

Seeking to distinguish itself from the defendants in *Beverly Hills Fan*, AltoCom argues that its contacts with Delaware have been insufficient to cause them to reasonably foresee that they would be "haled before a court" located here. In *Beverly Hills Fan*, one of the defendants, Ultec, was incorporated in the Peoples Republic of China and manufactured a fan which the plaintiff, the Beverly Hills Fan Company, claimed infringed its patent. Ultec's fans were imported from Taiwan where they were manufactured by the other defendant, Royal Sovereign, a New Jersey corporation. The Beverly Hills Fan Company filed suit in the Eastern District of Virginia where some of Ultec's fans had made their way to the Alexandria, Virginia outlet of a large retailer known as Builder's Square. The defendants moved to dismiss the complaint against them for lack of personal jurisdiction. The Federal Circuit reversed, stating, "The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction." *Id.* at 1565.

Citing to the *Beverly Hills Fan* opinion, AltoCom argues that in order to find jurisdiction, the manufacturer and distributor must "act[ ] in consort [to] place[ ] the accused [product] in the stream of commerce." Thus, AltoCom contends that control over the chain of distribution by the defendants was the key to the decision in *Beverly Hills Fan*. As a result, AltoCom asserts, *Beverly Hills Fan* is inapposite. In other words, AltoCom argues that the stream of commerce theory, though an appropriate basis for finding the contacts requisite for jurisdiction, does not apply in this case because AltoCom has no control, "contractual, practical or otherwise," over

the activities of its licensees and their sub-licensees which compose the distribution network for its softmodems.[7]

■ The court disagrees. In *Beverly Hills Fan*, the key to the court's decision

was not whether the defendants exercised control of the distribution network. This was but one factor considered by the court.[8] Unfortunately, AltoCom has elected not to discuss the other elements which were noted by the court and which fac-

7. AltoCom attempts to analogize its activities to those of the defendant in *Red Wing Shoe*, 148 F.3d at 1361–62, in an effort to convince the court that the stream of commerce theory is not applicable to this situation. The court is not convinced.

The defendant in *Red Wing Shoe* was solely engaged in the business of licensing and enforcing the rights associated with two patents. AltoCom's business is much different—it places a software "product" called a softmodem into the stream of commerce. This fact was explicitly acknowledged by AltoCom's President during a deposition where he testified as follows: "What we sell is—our *product* is—a *software product* is what we sell...." (emphasis added). Further, as AltoCom notes, "AltoCom and PC–Tel *make* different *products* ..." (Emphasis added).

The *Red Wing Shoe* court did not reject the rationale of *Beverly Hills Fan;* nor did the court, as AltoCom again argues, base its ruling in the main upon the licensor's lack of control over its licensee. Instead, the *Red Wing Shoe* court found the stream of commerce theory inapplicable because the defendant sold a "product [which was] a covenant not to sue, not a shoe incorporating the patented technology. As such, [the] product never enter[ed] the stream of commerce." 148 F.3d at 1362. Since AltoCom *does* sell shoes, as it were, the rationale underlying the stream of commerce theory is clearly applicable.

Unlike the defendant in *Red Wing Shoe*, which was also a licensor, AltoCom has licensed something more than an intangible legal right. In particular, AltoCom has licensed a *product* that is integrated into other products expressly designed and designated for end use by consumers in the fifty states and beyond.

Additionally, though integrated into other products which are not marketed under the AltoCom service mark, AltoCom's products maintain their own identity. When an end user enters an appropriate command, the AltoCom softmodem causes a legend to be displayed on the consumer product screen identifying the modem as an "AltoCom software modem." These modems are also capable of being serviced apart from the end user products into which they have been integrated. These facts clearly distinguish AltoCom from the defendant that finds itself subject to jurisdiction merely because it decided to do busi-

ness with a company that does business nationwide. AltoCom's software products are an integral part of the sales activities of a number of multi-national companies that maintain nationwide distribution and sales networks.

Unlike the defendant in *Red Wing Shoe*, AltoCom's products do, indeed, enter the stream of commerce. Therefore it seems entirely reasonable that AltoCom should expect to appear in this and other fora from time-to-time in order to resolve disputes related to the distribution and sale of those products in this and other states. AltoCom's attempts in this case to invoke the stream of commerce theory as a shield fall equally as short as the *Red Wing Shoe* plaintiff's efforts to use that theory as a sword. Simply stated, the *Red Wing Shoe* case is not a stream of commerce theory case but the case before this court does fall into that category. The Federal Circuit's comment regarding the absence of control by the defendant over its licensees is dicta since the determinative factor in the court's decision was not the so-called absence of control but the fact that the defendant there had placed nothing into the stream of commerce.

8. Indeed, the court in *Beverly Hills Fan* acknowledged a post *World–Wide Volkswagen* split in the lower courts over the exact requirements of the stream of commerce theory. The court also noted a split on the Supreme Court on this issue in the case of *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The nature of that split centers upon the answer to the question of whether, in order to apply the stream of commerce theory, the defendant's actions must be purposefully directed toward the forum state or whether the mere placement of goods in the stream of commerce with the expectation of realizing an economic benefit from their retail sale is sufficient for the forum state to exercise jurisdiction.

However, the *Beverly Hills Fan* court declined to join the debate as to which of the stream of commerce theories is the more prevalent or better view. 21 F.3d at 1566–67. Instead, it held that, "under either version of the stream of commerce theory, [the] plaintiff [had] made the required jurisdictional showing." *Beverly Hills Fan Co.* 21 F.3d at 1566. This court reaches the same conclusion with respect to AltoCom.

tored into the calculus of the court's ruling. The entire passage reads:

> When viewed in the light of the allegations and the uncontroverted assertions in the affidavits, [the] plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there.

*Id.* at 1566.

AltoCom's control argument relies upon its misperception that, in *Beverly Hills Fan,* "the manufacturer's *control* over the chain of distribution" was essential to the court's finding that Ultec was subject to personal jurisdiction in Virginia because of the activities of its distributor, Royal. (emphasis added). To support this proposition, AltoCom points out that the court stated that the defendants were "acting in consort." *Id.* at 1566. However, when the word "consort" is viewed in the context used by the court in *Beverly Hills Fan,* the only definition that seems applicable is "concurrence or harmony." *See Webster's Third New International Dictionary* 485 (1993). There is no suggestion of the concept of control in any of the definitions provided by either the *Beverly Hills Fan* court or, for that matter, *Webster.* So, contrary to AltoCom's suggestion, the Federal Circuit's choice of words, a choice this court assumes was careful and intentional, does not appear to expressly state or even imply the requirement of *control.*

AltoCom and its licensees (and their sublicensees) *consorted* by acting in concurrence or harmony. Specifically, AltoCom's softmodem product is manufactured for integration by another manufacturer into an end user consumable. This product is, in turn, placed into a distribution chain which at its end consist of a variety of retail outlets that sell these products directly to purchasers of electronic goods, *i.e.,* retail consumers. Many, if not all, of these outlets have a national presence. Indeed, AltoCom's softmodems are distributed internationally. In this respect, AltoCom "act[ed] in consort" with its licensees to place its softmodems in the stream of commerce.

Further, as previously noted, before shipping its product, AltoCom requires its customers enter into a licensing agreement which provides the terms and conditions for AltoCom's receipt of revenue. *See* Note 6 *supra.* Royalties are payed to AltoCom by the licensee on the basis of each port that is enabled in the licensee's or sublicensee's "Shipped End User Product." The agreement defines the term "shipped" as an end user product containing an AltoCom softmodem that is placed by the licensee or sublicensee into its distribution channel or is used by the licensee or sublicensee as an end user. By its very terms, terms drafted by AltoCom, none of that which is contemplated by this business arrangement can be accomplished without the concurrence, without there being harmony, that is, without all parties from the beginning to the end of the distribution network acting in consort to place products containing integrated AltoCom software into the stream of commerce.

Thus, by contracting with entities that have a market presence both nationally and world-wide, AltoCom can hardly be heard to complain that it did not know the likely destination of some of its products would include this forum. Indeed, the company, acting in concert with its licensees, sells its products expressly for integration into end user products with full knowledge that these goods will then be placed into established distribution channels that service the State of Delaware. The cause of action for patent infringement in this case is alleged to arise out of these activities. As a result, AltoCom should reasonably have anticipated being brought into court here. These are the factors the *Beverly Hills Fan* court held

must be considered. However, due process requires that the court make one more inquiry.

■ Notwithstanding the existence of AltoCom's purposeful minimum contacts with this forum, the court must consider whether the "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *See Asahi,* 480 U.S. at 121–122, 107 S.Ct. 1026 (internal quotation marks omitted).

As the *Beverly Hills Fan* court noted, these cases are confined to those instances where the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendant to litigation within the forum. 21 F.3d at 1567. This is not one of those cases. Delaware's interest in this dispute are substantial. Both Motorola and PC–Tel are Delaware corporations. Clearly this forum's interest extends to these corporate citizens that have sought the protection of Delaware's laws. Delaware also has an interest in discouraging injuries that occur within the state, and that interest extends to patent infringement actions such as this one. *Id.* at 1568. Finally, as the *Beverly Hills Fan* court recognized, although it is to Motorola's and PC–Tel's advantage to litigate this dispute in this forum, this factor does not militate against adjudication of the matter here. *Id.* at 1568–69.

As to the burden placed on AltoCom, a California corporation headquartered in northern California, the Federal Circuit did not find it unduly burdensome to require Ultec, a corporation organized under the laws of the People's Republic of China and headquartered in Taiwan, to cross the Pacific Ocean and the continental United States in order to defend itself in a federal court located in Virginia. As the *Beverly Hills Fan* court noted, modern communication and transportation capabilities made this journey far less burdensome than it once was. *Id.* at 1569. Thus, as a domestically based company, that is located considerably closer to this forum than was Ultec to Virginia, AltoCom will bear an even lesser burden. Like Ultec, AltoCom will benefit from the enhanced communication capabilities, such as audio and video teleconferencing, available to assist it in the conduct of this litigation, as well as its business affairs. Accordingly, the court concludes that the burden on AltoCom is not sufficiently compelling to outweigh the interests of Motorola, PC–Tel, and Delaware in this dispute.

### 2. Delaware's long–arm statute.

■ The second step in the court's analysis into the propriety of subjecting AltoCom to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute, Del.Code Ann. tit. 10, § 3104, apply. While AltoCom contends that it does not fall within the grasp of any of Section 3104's provisions, Motorola contends that at least three separate subsections reach AltoCom. For purposes of this opinion, the court need only discuss one.

Under subsection (c)(4), this court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual "regularly does or solicits business, engages in any other persistent course of conduct in the State, or derives substantial revenue from services or things used or consumed in the State." Del.Code Ann. tit. 10, § 3104(c)(4). Following the guidance of other federal courts in this district, the court will interpret this language broadly, as reaching the "maximum parameters of the due process clause." *See, e.g., Jeffreys v. Exten,* 784 F.Supp. 146, 151 (D.Del.1992) (collecting cases).[9]

9. Thus, although it has been said that the due process and long arm inquiries should not be collapsed together in the jurisdictional analysis, *see Intel,* 20 F.Supp.2d at 694, the court

As discussed at length, AltoCom has acted in consort with its licensees or customers to place products containing its softmodems into a nation-wide distribution network. As a result, many of its products have found their way to Delaware—their *intended* destination. Consequently, AltoCom cannot now complain that it should not be sued here.

Finding sufficient contacts to subject AltoCom to personal jurisdiction under both the State's long-arm statute and the Due Process Clause, the court will now move to a discussion of whether this action should be transferred to the Northern District of California. *See* 28 U.S.C. § 1404(a).

## B. Venue.

Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought."

■ The parties agree that Motorola could have brought this action in the Northern District of California. Both AltoCom and PC–Tel maintain their corporate headquarters in cities located there. *See* 28 U.S.C. § 1391(b)(1) (1994). Additionally, since this is a patent infringement matter, this lawsuit could have initially been filed there. *See id.* at § 1400(b). The court will, therefore, move on with the inquiry as directed by the Third Circuit's decision in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995).

In *Jumara*, the Court of Appeals provided a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *See id.* (quoting 15 *Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters* § 3847 (2d ed.1986)). These "factors" include six private and five public interests which the court should consider. *Id.* at 879.

### 1. The private interests.

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses—but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents—again, only to the extent these files cannot be produced in the alternate forum. *See id.* at 879.[10]

### a. Convenience of the parties.

Geographically, Delaware is a rather inconvenient forum. AltoCom and PC–Tel are both located in northern California. As a result, they will both have to travel over six thousand miles round-trip when their physical presence before the court is required. However, by filing its own lawsuit here, PC–Tel has effectively exchanged geographical inconvenience for ju-

believes that "the two-step inquiry [ultimately] folds into one" given the obligation to interpret the State's long-arm statute as "reach[ing] as many extra-territorial defendants as the Due Process Clause will allow." *See Red Wing Shoe*, 21 F.3d at 1358–1359.

**10.** For the reasons this court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors—specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere—since doing so runs the risk of double-counting these interests and throwing off the transfer analysis. *See Affym-*

*etrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 197–201 (D.Del.1998).

For example, as the court stated in *Affymetrix*, regardless of whether or not a plaintiff is suing on its "home turf," its choice of forum receives "paramount" consideration. *Id.* at 200. As a result, the court can only disturb this choice if the defendant shows that "the 'balance of convenience' tips *strongly* in favor of transfer." *See id.* at 200. With this standard in mind, the court will now consider the relevant *Jumara* factors as they apply to this case.

dicial expedience.[11] Therefore, the only inconvenience which the court need consider is that suffered by AltoCom.

Nevertheless, regardless of this inconvenience, the court believes that, financially, AltoCom can shoulder the burden of litigating in Delaware. Although AltoCom is a relatively small entity, at least when compared to Motorola, by its own admission, it is a multi-million dollar company with interests, activities, and targeted markets extending well beyond the geographic boundaries of northern California and, indeed, the continental United States. *See Bering Diagnostics GmbH, Inc. v. Biosite Diagnostics, Inc.*, No. Civ.A. 97–501, 1998 WL 24354, at *5 (D.Del. Jan.6, 1998) ("As such, the relative economic burden . . . [of] litigating in Delaware is minimal.") (citations omitted).

Thus, while AltoCom attempts to characterize this dispute as one involving "the Silicon Valley based activities of two Silicon Valley based companies," the court is not persuaded by this portrayal. First, as previously stated, PC–Tel's interests are largely irrelevant since the company would prefer to litigate in Delaware. Second, like PC–Tel, AltoCom is not a local or regional business that has only targeted markets located in northern California or on the West Coast. As a result, AltoCom cannot reasonably complain about the particular and unique problems that a smaller, local business might have in defending itself in this forum. *See Affymetrix*, 28 F.Supp.2d at 202 (citing *Wesley–Jessen*

*Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D.Del.1993)). Instead, while small, AltoCom is a corporation with fairly substantial interests that operates in the national and international marketplace. *See id.* (citing same). Moreover, it has developed its business in anticipation of doing business around the country and the globe. *See id.* (citing same). Consequently, AltoCom must be able to identify some unique or unexpected burden associated with defending this action that militates in favor of transfer.

On this point, AltoCom contends that, because of its size, litigating this matter in Delaware will have an adverse impact on its day-to-day operations. This is so apparently because its General Counsel, who is also its Vice–President of Business Affairs and Chief Financial Officer, will have to fly across the country to attend "a hearing, settlement conference, or other event scheduled by the Court." In fact, AltoCom predicts that allowing this matter to proceed in Delaware will "effectively shut down [the company's] operations for the duration of the trial." The court is not swayed by these unsupported assertions of disaster.[12] As the *Bering Diagnostics* court observed, litigation wherever it occurs, will interfere with the day-to-day operations of the parties. 1998 WL 24354, at *5. As a result, the considerations associated with AltoCom's relative physical and financial position fail to weigh heavily in favor of transfer.

---

11. As the court previously discussed, instead of filing a counter-claim in Motorola's Massachusetts action, PC–Tel elected to file suit in Delaware which, then, lead Motorola to dismiss its first lawsuit only to refile it here in Delaware.

12. For example, as the *Beverly Hills Fan* court recognized, in this age of vastly improved communications and transportation capabilities, the costs of litigating in a distant forum are greatly reduced. 21 F.3d at 1569 (citing *World–Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. 559). In addition, technological advances, such as video conferencing, can practically eliminate some of these costs.

Furthermore, pre-trial discovery such as depositions need not occur in Delaware. And, as to the representatives of the parties, their presence in this forum will likely be unnecessary except during the trial, which is presently scheduled for ten business days.

Additionally, as far as counsel is concerned, the need for their physical presence in the District should be relatively minimal. Except for matters such as oral argument (when ordered by the court) on case dispositive motions, the *Markman* hearing (if necessary), and, of course, trial, the court has expressed its willingness to have counsel appear by teleconference.

### b. Convenience of the witnesses.

While AltoCom claims that several of its licensees or customers are located in California and are thus apparently amenable to the subpoena power of a Northern District court, AltoCom fails to identify any of these companies or their executives by name. Instead, it only states, in the most general fashion, that their testimony on the issues of liability and damages is "essential." However, "[g]iven the lack of specificity with which these individuals are identified and the [total] absence of 'adequate information with respect to the content and materiality' of their testimony," the court affords them no weight in its balancing test. *See Affymetrix*, 28 F.Supp.2d at 205 (citing, *inter alia, United Air Lines v. United States*, 192 F.Supp. 795, 796 (D.Del.1959)).

### c. The location of documents and other evidence.

Finally, with respect to the last private interest articulated by the *Jumara* court, the court affords only minimal weight to the materials located in the Northern District of California. *Cf. id.* (citing *Critikon v. Becton Dickinson Vascular Access, Inc.*, 821 F.Supp. 962, 966–67 (D.Del.1993)).

### 2. The Public Interests.

The next set of interests discussed by the Third Circuit Court of Appeals in *Jumara* are five "public interests." 55 F.3d at 879–80. As with the private ones, the court will discuss only those interests which bear upon this particular "balance of convenience" analysis. *See Sunds Defibrator, Inc. v. Durametal Corporation*, No. Civ.A. 96–483, 1997 WL 74660, at *4 (D.Del. Jan.31, 1997). These interests are (1) practical considerations making trial easy, expeditious, or inexpensive, (2) the administrative difficulties posed by the relative congestion of the dockets in the respective fora, and (3) any local interest in deciding local controversies at home. *Id.*

According to AltoCom, it would face "dramatically" increased expenses if it had to litigate this matter in the District of Delaware. In addition, AltoCom claims that the Northern District has a greater interest in adjudicating this dispute since it involves two "Silicon Valley based companies." The court has already rejected these arguments in its earlier discussion of the "private" factors in the "balance of convenience" analysis. The remaining "public interests" do not, as conceded by AltoCom, favor transfer.

Finally, given the practical consideration of judicial economy, the court will decline AltoCom's request to sever the claims against it and transfer them to the Northern District of California. As both Motorola and PC–Tel point out, trying essentially the same legal action in two separate fora would needlessly duplicate the efforts and expenses of not only the parties but also the corresponding courts.

## IV. CONCLUSION.

Because the defendant AltoCom has sufficient contacts with this forum to compel its appearance here without offending the Due Process Clause and because Delaware's long-arm statute is intended to confer jurisdiction to the maximum parameters of due process, AltoCom's motion to dismiss the complaint against it for lack of personal jurisdiction will be denied. Additionally, because AltoCom has failed to carry its heavy burden in convincing the court that the "balance of convenience" tips strongly in favor of the Northern District of California, AltoCom's motion to transfer this action will also be denied. The court will issue an order consistent with this opinion.

### *ORDER*

For the reasons stated in its Memorandum Opinion of this date, IT IS HEREBY ORDERED that the Motion to Dismiss or, in the alternative, to Transfer (D.I.13) filed by Defendant AltoCom, Inc. is DENIED.