KOLLMORGEN CORPORATION, Plaintiff,

v.

YASKAWA ELECTRIC CORPORATION, Yaskawa Electric America, Inc., Defendants.

Civil Action No. 99–308–R.

United States District Court, W.D. Virginia.

Dec. 13, 1999.

William B. Poff, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, John A. Diaz, Alfred P. Ewert, Harry C. Marcus, Robert E. Paulson, Andrew M. Riddles, Kenneth S. Weitzman, Morgan & Finnegan, New York City, for plaintiff.

J. Scott Sexton, Gentry, Locke, Rakes & Moore, Roanoke, VA, William H. Mandir, Eric P. Halber, Sughrue, Mion, Zinn, MacPeak & Seas, PLLC, Washington, DC, for defendants.

## MEMORANDUM OPINION

TURK, District Judge.

This case is before the Court on the motion of Defendant Yaskawa Electric Corporation ("YEC") to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, both YEC and Defendant Yaskawa Electric America, Inc. ("YEA"), move to have the case transferred to the United States District Court for the Northern District of Illinois, where YEA has its principal place of business.

Each side filed voluminous papers in support of its position. Arguments were heard by this Court on November 29, 1999. For the reasons that follow, YEC's motion to dismiss, or alternatively to transfer is denied, as is YEA's motion to transfer.

## I. OPERATIVE FACTS

Kollmorgen is a corporation, with its principal manufacturing facility in Radford, Virginia, that manufactures electrical devices and components. (Mem. in Opp. at 4) In addition, Kollmorgen holds numerous patents, of which two-U.S. Patent Numbers 4,686,437 and 4,447,771–are the alleged subjects of infringement by defendants YEC and YEA. YEC is a Japanese corporation, based in Tokyo, and engaged in the same type of electrical design and manufacturing business as Kollmorgen. A view of a company website [1] reveals that YEC disburses its products globally through a network of wholly-owned subsidiaries in various countries. (<www.Yaskawa.com>, visited Dec. 10, 1999). YEA, located in Waukegan, Illinois, is YEC's American subsidiary. It is also the only company in the United States which transacts any business directly with YEC. YEA does not purchase goods from any other source besides YEC. Unlike a conventional distributor or sales agent, YEA actually purchases its entire inventory directly from YEC.[2] YEA then sells the products through its distribution channels to various customers nationwide. There is no evidence that YEC receives any direct share of YEA's sales proceeds; rather, YEC's benefit in this bargain is through YEA's purchase of its products for resale in the United States. If YEA's customers like the products, they will buy more from

---

[1] Although the website is technically operated, designed, and maintained by YEA, it is replete with corporate structure, catalogue, maintenance/service, and sales contact information obviously gleaned from YEC. Indeed, whole pages of the site are devoted to providing information about YEC's corporate philosophy, management, and product lines.

[2] There is no evidence in the record that YEC retains any form of security interest or other legal or equitable claim to these goods once they are sold to YEA.

YEA, who in turn will purchase more from YEC.

One such customer of YEA is Commonwealth Controls, which maintains an office in Roanoke. When Lane Brizendine, investigator for Kollmorgen's counsel, visited Commonwealth Controls' offices back in June, he asked for information regarding electrical controls "or other products made by Yaskawa." (Brizendine Affid. at 2). In response, he was provided with a catalogue, printed by YEA, containing detailed information and schematic drawings of various products available through Commonwealth Controls from YEA.[3]

## II. DISCUSSION: YEC's MOTION TO DISMISS

The issue is whether YEC can be sued in the Western District of Virginia. During argument, YEA's counsel acknowledged that YEA can be sued in the Western District because of its contacts with Commonwealth Controls. (Brizendine Aff. at 1) This admission is bolstered by YEA's website, which contains a page listing "Virginia Contact Information." (<http://Yaskawa. com/products.nsf/ Region/VA?OpenDocument>, visited December 10, 1999). Commonwealth Controls is specifically listed on the page as Yaskawa's "Motion Control Distributor", and their website address is provided, along with address and phone numbers. Thus, the question becomes whether YEC's contacts with and through YEA make it subject to the jurisdiction of this Court. For the reasons that follow, this Court finds that they do.

## A. IN PERSONAM JURISDICTION

The assertion of personal jurisdiction hinges on satisfying two elements: (1) Virginia's long-arm statute, and (2) the Due Process Clause. YEC's business practices and its contacts bring it squarely within the ambit of the long-arm statute, and satisfy the Due Process requirements as well.

### 1. Virginia's Long–Arm Statute

 Even in a purely Federal matter, such as a patent dispute, Federal courts apply the forum state's long-arm statute to determine whether personal jurisdiction exists. See Fed. R. Civ. Pro. 4(e)-(f); See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1569, 30 U.S. P.Q.2d 1001 (Fed.Cir.1994). Virginia's long-arm statute, VA Code Ann. § 8.01–328.1 (Michie 1999), has been construed repeatedly to be coequal in scope and reach to the Due Process Clause. See e.g., Carter v. Trafalgar Tours, Ltd., 704 F.Supp. 673, 675 (W.D.Va.1989)(Turk, C.J.) The question at this stage becomes whether any of the numerous long-arm provisions can be said to apply to YEC.

In their opening brief, Kollmorgen cites four long-arm provisions which it contends could apply in this case. (Mem. in Opp. at 21). They need not each be considered in detail, because one of them, Virginia Code Ann. § 8.01–328.1(A)(4), has been held by the Federal Circuit to include patent infringement cases like the one here. See Beverly Hills, 21 F.3d at 1571 (holding in a case with virtually identical facts to the

---

**3.** As counsel for Kollmorgen noted during oral arguments, the fact that the products in YEA's catalogue are from YEC is plain because (1) YEA manufactures no products of its own, (2) YEA's only source of products is YEC, and (3) on page 187 of the catalogue, a reproduction of a "Certificate of Registration" from the Japan Quality Assurance Organization appears. The certificate is signed by the President of YEC, and pertains to the electrical control systems contained in the catalogue. Specifically, the Sigma Servo products which are alleged by Kollmorgen to infringe on its patents are contained in the catalogue and certificate.

present controversy that all elements of Virginia's long-arm statute section (A)(4) were met). Thus, *Beverly Hills*-which will be discussed in more detail later in this opinion-strongly supports a finding that YEC satisfies Virginia's long-arm statute.

## 2. Due Process

"The Due Process Clause requires that, in order to subject a defendant who is 'not present within the territory of the forum' to personal jurisdiction, the court must first make sure that this party 'ha[s] certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of justice and fair play.'" *Motorola, Inc. v. PC–Tel, Inc.*, 58 F.Supp.2d 349, 352 (D.Del.1999) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). In order to give non-resident defendants "fair warning" that a given activity subjects them to suit in the forum state, these "minimum contacts must be purposeful." *Id; See Burger King v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's contacts with the forum must be of a kind that would cause the defendant to "reasonably foresee" that it might be "haled before a court" in the forum. *Id.; World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). And finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Id.; Beverly Hills Fan*, 21 F.3d at 1568.

In other words, Due Process, the second prong of the jurisdictional test, is itself a two-prong analysis: (1) minimum contacts, and (2) fairness to the defendant in spite of its contacts.

### a. Minimum Contacts

 Because of the importance of maintaining a uniform system of patent laws, the Federal Circuit has declared that Federal Circuit law is to be applied in patent cases on the issue of jurisdiction. *See Beverly Hills Fan*, 21 F.3d at 1564–5; *Amana v. Quadlux*, 172 F.3d 852, 856 (Fed.Cir.1999); *Schwanger v. Munchkin, Inc.*, 1999 WL 820449 (Fed.Cir.1999) (unpublished). Further, the Federal Circuit has established a three-prong test for determining whether minimum contacts exist: (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *See Schwanger* at *5, quoting *3D Systems, Inc. v. Aarotech Lab.*, 160 F.3d 1373, 1378 (Fed.Cir.1998). There is no dispute that the claim in this case arises out of the alleged shipment by YEC and YEA of infringing goods into Virginia. Therefore, the Court need only consider whether YEC purposefully directed its activities at Virginia, and if so, whether jurisdiction is fair.

### 1. Purposeful Direction at Virginia

In *World–Wide Volkswagen, supra*, the Supreme Court discussed the requirements of purposeful direction, and opined:

"[I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product ..., it is not unreasonable to subject it to suit.... The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they

will be purchased by consumers in the forum State."

444 U.S. at 297–8, 100 S.Ct. 559, quoted in *Beverly Hills Fan,* 21 F.3d at 1566.

### Beverly Hills Fan

■ The strongest evidence of purposeful direction is *Beverly Hills Fan.* Factually, it is indistinguishable from the present case. A Chinese corporation manufactured products which where then shipped through an intermediary, Builder's Square, into Virginia and resold. An American company brought a patent infringement suit claiming the Chinese products violated patents held in America. The Federal Circuit held that jurisdiction in Virginia was proper because the

> necessary ingredients for an exercise of jurisdiction [were present]: defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there.

*Id.* at 1566; *see also Motorola,* 58 F.Supp.2d at 355.

YEC has argued that *Beverly Hills Fan* is inapposite because the defendant Chinese corporation in *Beverly Hills* admitted to shipping its products into America through an intermediary company and thereby taking advantage of the intermediary's established distribution network. According to YEC, this makes *Beverly Hills* distinguishable because YEC has never admitted to using YEA as an intermediary. Indeed, YEC's position is that YEA is the end-point of YEC's United States market, and YEC states in its papers that it has no knowledge of any distribution channels, sales agents, or other business dealings conducted by YEA. In essence, YEC claims that they cannot have

the "expectation that goods will be purchased by consumers" in Virginia contemplated in *World–Wide Volkswagen,* because YEC simply sells its products to YEA and no more. (See, e.g., Shigeta Affid. at 2) ("all activities relating to the sale of YEC's products in the United States are conducted by YEA."); (Tsuda Supp. Affid. at 2) ("YEA does not act as a marketing arm for YEC.")

This ostrich-like stance is untenable under the law. While it may well be true that YEC deliberately takes steps to keep itself in the dark about YEA's marketing strategies, it cannot do so to escape jurisdiction. "The court may make the reasonable inference that the sale of a large number of devices to a firm with a nationwide distribution network will generally result in the sale-or at least the use-of one of those devices in the forum state." *Fluke Corp. v. Fine Instr. Corp.,* 1994 WL 739705,*5 (W.D.Wash.1994). In *Fluke,* the defendant foreign corporation contracted with an American distributor to sell its products in the United States. The distributor, who also sold products from other manufacturers, had its own established distribution channels and marketing strategy. Like YEC, the foreign defendant claimed lack of personal jurisdiction on the grounds that it had no knowledge whatsoever of any sales plan or stratagem in the United States, and that it therefore could not purposefully avail itself of any forum state's markets. The Court, in rejecting that argument made the following illuminating remarks:

> Contrary to [the foreign corporation] Fine's assertions, however, and unlike the facts underlying *Asahi[Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)] evidence shows that ... Fine advertised its product in [the American distributor] UEI's catalog;

and Fine purposefully employed UEI's distribution system which brought its products to Washington. (*Id.* at *3)

Fine [like YEC] also attempts to distinguish this case from *Beverly Hills Fan* by stating that in *Beverly Hills Fan* it was undisputed that the intermediary was selling the accused product in the forum state, and that the manufacturer was purposefully selling its products in the forum state through intermediaries. Here, similar to *Beverly Hills Fan,* UEI is selling the accused product in Washington, and Fine is purposefully and in consort with UEI selling its product in Washington through UEI. Having established that Fine utilized a national distribution network, they should reasonably have anticipated being brought into court in Washington. (*Id.*)

It is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products.

(*Id.*) quoting *Honeywell, Inc. v. Metz,* 509 F.2d 1137, 1144 (7th Cir.1975).

If anything, the facts of this case militate more strongly in favor of jurisdiction than in *Fluke* and *Beverly Hills Fan.* In each of those cases, the intermediary was a separate company entirely, free to do business with as many suppliers as it wished. Indeed, the distributors carried similar products by numerous other manufacturers besides the defendant. YEA has no such luxury. There is no evidence that YEA exists for any purpose other than to purchase YEC's products and sell them in America. As a wholly-owned subsidiary, YEA may well be legally distinct from YEC, but unlike the companies in *Beverly Hills Fan* and *Fluke,* YEA and YEC share a common corporate tie. Not only that,

but they share the same name: "Yaskawa." If, as in *Beverly Hills Fan* and *Fluke,* a foreign defendant is expected to realize the distribution channels of an unaffiliated American distributor, then YEC can have little excuse for not knowing the distribution channels of its own subsidiaries.

Indeed, the affidavits from YEC's executives make it clear that YEC is very much aware of YEA's structure, and eager to take advantage of its U.S. markets. In one declaration, an executive states that his job is to "oversee the sales strategy of servo motors and servo amplifiers worldwide." (Shigeta Decl. at 1). If YEC does not purposefully direct its products toward consumers outside Japan, it is difficult to imagine how YEC could have a "worldwide sales strategy." Shigeta goes on to state that "all activities relating to the sale of YEC's products in the U.S. are conducted by YEA." (*Id.* at 2). This definitely indicates knowledge by YEC that its goods were being distributed throughout America by YEA. With such a relationship in place, YEC cannot very well pretend it is oblivious to the marketplace benefit it receives through YEA's activities.

"Thus, by contracting with entities that have a market presence both nationally and world-wide, [the foreign defendant] can hardly be heard to complain that it did not know the likely destination of some of its products would include this forum." *Motorola,* 58 F.Supp.2d at 355

### YEA's Web Site

YEA's web page makes no attempt to crisply define the independence of the two companies. Instead, the web site opens with the words "YASKAWA, A WORLD OF AUTOMATION SOLUTIONS," accompanied by a map of the world. (<www.Yaskawa.com>, visited Dec. 10, 1999) By maneuvering through the site, a

user can obtain all manner of information about YEC, as well as about all of YEC's other overseas subsidiaries. YEC has filed numerous declarations to the effect that the web site is maintained and created by YEA, in Illinois, and that YEC has no control or input into the site. These are mainly intended to demonstrate that YEC is not using the web site as a contact with Virginia, and it therefore cannot by itself be a basis for jurisdiction. *See CIVIX–DDI LLC v. Microsoft,* 52 USPQ2d 1501 (D.Colo.1999). This may be so, but neither is YEA using the website to promote itself. Instead, the web site extolls the "Yaskawa" family of companies, leading the viewer to believe they are all part of the same distribution chain. For example, one page of the site contains a link labeled "Yaskawa International Offices," which gives the unmistakable impression that "Yaskawa" has "offices" all over the world, and that companies like YEA are not separate entities, but sales offices for a mother corporation. (<ht tp://Yaskawa.com/About.nsf>, visited Dec. 10, 1999).

And although YEC may not be the originator of the site or its primary caretaker, it is unquestionably responsible for much of its content. The catalogues, schematics, and corporate charter/structure/philosophy information contained in YEA's page had to come from YEC, because YEA does not manufacture those components, it only sells them.[4] By providing that material to YEA, YEC is seeking to help YEA's marketing efforts and improve sales of its

products worldwide. This is enough to constitute purposeful direction by YEC, because YEC's arguments that it does not control YEA are wide of the mark. YEC need not be in control. The test is whether the corporations are in "consort." [5]

### Corporate "Consort"

The fact that YEA possesses so much information about YEC and its products casts doubt on the affidavits of YEC executives like Mr. Junji Tsuda, Executive Vice President of Sales and Marketing, who stated that "YEA does not act as a marketing arm for YEC." As mentioned above, the test is not really whether YEC controls YEA's activities. Rather, the standard is whether the two corporations "acting in consort, placed the accused [product] in the stream of commerce . . ." *Motorola,* 58 F.Supp.2d at 355, quoting *Beverly Hills Fan,* 21 F.3d at 1566. As the Court noted in *Motorola,* "there is no concept of control in any of the definitions provided by either the *Beverly Hills Fan* court or, for that matter, Webster. So . . . the Federal Circuit's choice of words, a choice this court assumes was careful and intentional, does not appear to expressly state or even imply the requirement of control." *Motorola* at 355.

In other words, YEC need not be in "control" of YEA's marketing strategy, or even aware of all its particulars. It is enough that YEC and YEA work together-contractually or otherwise-to get YEC's

---

**4.** The same is true of the catalogue provided to Lane Brizendine by Commonwealth Controls. As counsel for Kollmorgen stated during arguments, the catalogue may have been printed by YEA, but the *content* of the catalogue had to come from YEC. By providing YEA with that information, YEC is undoubtedly seeking to aid YEA's sales efforts by providing data, drawings, and other information for use in YEA's marketing brochures and catalogues.

**5.** Because this Court finds minimum contacts aplenty in other areas, a detailed analysis of the complexities of internet jurisdiction need not occur here. However, for an outstanding discussion of this emerging topic, *see* Donnie L. Kidd, Jr. *"Casting the Net: Another Confusing Analysis of Personal Jurisdiction and Internet Contacts in Telco Communications v. An Apple a Day,"* 32 U.Rich.L.Rev. 505 (1998).

products into the stream of commerce. *See id.* The record provides ample evidence of this consort. For example, the fact that YEC's schematics and marketing data were provided to YEA for inclusion in YEA's catalogue of YEC products that it provided to Commonwealth Controls indicates a cooperative effort by YEC and YEA to do whatever is necessary to sell YEC's products in the United States. Much of the information on YEA's website must have been provided by YEC, as discussed above. The most logical reason for that is a willingness by YEC to have its corporate philosophy and products promoted by YEA, its subsidiary. It makes no difference that YEA may be the sole operator of the web site. YEC's information is used in a way that suggests a cooperative effort by the two companies. Indeed, the website makes no attempt to differentiate YEC from YEA, instead referring to the business collectively as "The Yaskawa Family". YEA may have come up with this concept on their own, but YEC cannot insulate itself from jurisdiction by simply claiming it has a rogue subsidiary running around marketing its products without its knowledge. Under the unmistakable reasoning of *Beverly Hills Fan,* and *Motorola,* YEC has purposefully directed its activities toward Virginia. It is therefore subject to the jurisdiction of this Court.

### b. Fairness

■ The final prong of both the Federal Circuit test for minimum contacts and the *International Shoe v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) Due Process analysis is fairness. "Notwithstanding the existence of purposeful minimum contacts, a due process determination requires one further step . . . 'minimum requirements' inherent in the concept of fair play and substantial justice may defeat reasonableness of jurisdiction even if the defendant has purpose-

fully engaged in forum activities." *Beverly Hills,* 21 F.3d at 1567.

Typically, however, "these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Id.* at 1568, quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (must be "compelling case" of unreasonableness).

As in *Beverly Hills,* the facts and circumstances of this dispute simply do not rise to the level of unfairness to either party. Kollmorgen has its primary manufacturing facilities in the Western District. Commonwealth Controls, the alleged infringing contact in Virginia, is in the Western District as well. Virginia certainly has a substantial interest in providing a forum for this case. Furthermore, the cases where unreasonableness does exist are almost always ones where neither plaintiff nor defendant have any particular contact with the forum; and even then, jurisdiction is often held to be proper notwithstanding. *See, e.g. Keeton v. Hustler Magazine,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). This is simply not one of those cases.

For the foregoing reasons, YEC's contacts with Virginia, through YEA, are sufficient to subject it to jurisdiction in this Court. This leaves only the subject of YEC and YEA's motions to transfer venue.

### III. MOTIONS TO TRANSFER VENUE

■ Because the Court feels there is no compelling need to transfer this case to the Northern District of Illinois, discussion on this point will be brief. YEC has moved, in the alternative, to have the case

transferred to Illinois, where YEA is located. YEC concedes that it is subject to jurisdiction there. YEA joins the motion only on the grounds that it should be tried with YEC. Therefore, it is only necessary to decide where to try YEC; YEA will follow as a matter of comity and judicial economy.

"For the convenience of parties and witnesses, [or] in the interest of justice," a Court may transfer a case to "any other district where it might have been brought." 28 U.S.C.A. § 1404(a). This is a matter left largely to the discretion of the trial judge, who should weigh the equities and determine whether it will be unduly burdensome to one side or the other to have the case tried here. *See Motorola*, 58 F.Supp.2d at 356. Since Kollmorgen selected the forum, the Court need only consider the potential inconvenience to YEC and its witnesses.

While it is true that YEC's witnesses will have to fly from Japan to Roanoke to attend this trial, it is likewise true that YEC concedes that venue would be proper in the Northern District of Illinois. Therefore, as counsel for Kollmorgen noted at arguments, it is not really a question of the convenience of flying from Japan to Roanoke, but rather a question of the reasonableness of flying from Chicago to Roanoke. No matter where this case is assigned, YEC's people will have to fly to Chicago. And while the additional travel time places a slight extra burden on them, it is recognized that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Beverly Hills Fan*, 21 F.3d at 1569, quoting *World–Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. 559; *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). This ruling is bolstered by *Beverly Hills Fan*, where the Federal Circuit held that a Chi-

nese company in a virtually identical alleged patent-infringement situation, would not be overburdened by having to travel to Virginia to have its case heard in Federal Court there. The burden on YEC is no greater than that on the Chinese company.

Moreover, the burdens on Kollmorgen would be heavy if the case were transferred to Illinois. Kollmorgan manufactures its versions of the disputed electrical devices in Radford. The inventors of the patented products reside in the Roanoke area. If the case were moved to Illinois, Kollmorgen would have no way of compelling the attendance of certain of its witnesses who reside in the Western District. And according to Kollmorgen's counsel, the vast majority of documents in the possession of Kollmorgen that are relevant to this case are warehoused in the Western District. A change of venue to Northern Illinois would throw a wrench in Kollmorgen's ability to present its case. Accordingly, the motions to transfer venue by YEC and YEA are denied.

## CONCLUSION

For the foregoing reasons: (1) YEC's motion to dismiss for lack of personal jurisdiction is denied. YEC's alternative motion to transfer venue is also denied. Because its motion was linked to its desire to be in the same forum as YEC, YEA's parallel motion to transfer venue is also denied.

The Clerk of Court is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

## ORDER

This case is before the Court on the motion of Defendant Yaskawa Electric Corporation ("YEC") to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In the

alternative, both YEC and Defendant Yaskawa Electric America, Inc.("YEA") move to have the case transferred to the United States District Court for the Northern District of Illinois, where YEA has its principal place of business.

Upon review of the voluminous papers filed by both sides, after hearing arguments on November 29, 1999, and for the reasons articulated on the accompanying Memorandum Opinion, it is hereby

## ADJUDGED AND ORDERED

**(1) That YEC's motion to dismiss for lack of personal jurisdiction be DENIED;**

**(2) That YEC's alternative motion to transfer venue be DENIED; and**

**(3) That YEA's motion to transfer venue is DENIED.**

The Clerk of Court is directed to send certified copies of this Order and the accompanying Memorandum Opinion to all counsel of record.