**Eva FAULKNER and William E. Faulkner, Plaintiffs,**

v.

**CAROWINDS AMUSEMENT PARK, Defendant.**

No. 1:94–0252.

United States District Court, S.D. West Virginia, Bluefield Division.

Nov. 7, 1994.

Hobert F. Muncey, Jr., Katz, Kantor & Perkins, WV, for plaintiffs.

Lawrence E. Morhous, Brewster, Morhous & Cameron, WV, for defendant.

## *OPINION*

FABER, District Judge.

### I. *Statement of the Case*

In April of 1992 the plaintiffs, Eva Faulkner and William E. Faulkner, who are husband and wife, took their children to Carowinds Amusement Park near Charlotte, North Carolina, for a family outing. While standing in the viewing area for the "Whitewater Falls" ride with her infant daughter in her arms, Eva Faulkner saw a huge wave of water crash through a barrier and come toward her. The Complaint charges that, in attempting to evade this water, Eva Faulkner slipped on the slick floor and fell back-

wards, striking her head and sustaining serious and permanent injuries.

The Faulkners live in Princeton, Mercer County, West Virginia. They brought this civil action, naming Carowinds Amusement Park as the sole defendant[1], and basing jurisdiction on diversity of citizenship. The defendant was served with process pursuant to West Virginia Code, § 56–3–33, the State's "long-arm" statute.

Defendant filed the instant motion to dismiss, challenging the jurisdiction of this court and asserting that venue in this district is improper. In support of its motion, defendant has filed the affidavits of Nelson Schwab, III, President of Theme Parks, Inc., a North Carolina corporation, and Garry R. Bickett, who was at the time of Eva Faulkner's accident, Vice–President of Marketing for King's Entertainment Company, a North Carolina corporation. These affidavits establish the following: During April of 1992, Carowinds Amusement Park was owned by King's Entertainment Company, which subsequently changed its name to Theme Park Associates, Inc. Neither King's Entertainment Company nor Theme Park Associates, Inc., regularly does or solicits business, or engages in any other persistent course of conduct in West Virginia, nor does either derive substantial revenue from goods used or consumed or services rendered in West Virginia. Neither King's Entertainment nor Theme Park Associates, Inc., uses or possesses any real property in the State of West Virginia, nor has either corporation contracted to insure any person, property, or risk located within the State of West Virginia. The overwhelming majority of the patrons of Carowinds Amusement Park are residents of North Carolina and South Carolina. According to attendance surveys taken on a daily basis while the park is in operation, approximately one percent of Carowinds' patrons come from the State of West Virginia. As a result of the very limited patronage from West Virginia, Carowinds does not engage in any regular marketing or solicitation activities in that state and did no advertising in any media in West Virginia during 1992. The only marketing activities conducted in West Virginia during 1992 were carried out by the Group Sales Department which mailed some information to schools, churches, and other organizations regarding discounts available in connection with group visits to Carowinds, and caused one or more personal visits to be made by a group sales representative to such organizations in West Virginia. These occasional mailings and infrequent visits constituted the full extent of Carowinds' marketing activities in West Virginia during 1992.

In opposition to the motion to dismiss, the plaintiffs filed the affidavit of Eva Faulkner, which establishes the following: Eva Faulkner is a member of a Baptist church in Princeton, West Virginia, where she serves on various committees, including committees whose responsibilities deal primarily with the church youth. In the late Fall of 1993, or early Spring of 1994, her church received an unsolicited advertisement from Carowinds Amusement Park offering special group rates for churches. As a member of that church, having received the unsolicited advertisement and offer to visit Carowinds at a special rate, and relying thereon, she and her husband made a conscious decision to be part of a church group accepting the invitation and offer of a special discount rate. Payment for the tickets required by Carowinds for the group discount package was forwarded to Carowinds at its address in Charlotte, North Carolina, and, upon receipt of the payment by Carowinds for the tickets, the admission tickets and other information were forwarded to the Baptist Church in Princeton by Carowinds. Eva Faulkner also states that she is aware, from inquiring of other churches and school organizations, that Carowinds sends similar offers to such groups on a regular basis, year after year.

Apparently, the Faulkners returned to Carowinds in late 1993 or early 1994 in response to a church group solicitation, notwithstanding the accident which precipitated this action. The plaintiffs submitted with

---

1. Defendant has not objected to being sued under the name "Carowinds Amusement Park," although defendant's correct name, as explained below, is Theme Park Associates, Inc. If this action were to proceed, the misnomer could, of course, be corrected.

Eva Faulkner's affidavit copies of an advertising circular and a letter directed to "Dear Youth Coordinator" from Larry McFadden, Summer Fun Youth Days Coordinator for Carowinds. These materials relate to a Christian music festival which apparently took place in April of 1994, some two years after Eva Faulkner's accident. The court notes that the plaintiffs do not contend that they visited Carowinds in April of 1992 with their family in response to a church group solicitation by Carowinds.

## II. *Issue Presented*

The sole issue before the court upon the motion to dismiss is whether the defendant had sufficient contacts with the State of West Virginia to support this court's jurisdiction over it under the long-arm statute. Since the jurisdictional question is, in the court's view dispositive, defendant's objection to venue has not been considered.

## III. *The Standard for Summary Judgment*

Since matters outside the pleadings have been presented to, and not excluded by, the court, the motion to dismiss is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Federal Rules of Civil Procedure, Rule 12(b).

Summary judgment is appropriate only when, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Miller v. Leathers,* 913 F.2d 1085 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). A fact is deemed "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The entry of summary judgment is, upon motion, mandated against a party who fails to make a showing sufficient to establish the existence of an essential element of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The federal courts are courts of limited jurisdiction, possessing power only over cases entrusted to them by Congress consistent with the requirements of the Constitution. *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). The party who invokes the jurisdiction of a federal court must demonstrate that such jurisdiction exists. Charles A. Wright, *The Law of Federal Courts,* § 7, p. 27 (5th ed. 1994). Indeed, the federal courts are presumed to lack jurisdiction over a particular case until it is demonstrated that jurisdiction is present. *Turner v. Bank of North America,* 4 Dall. 8, 1 L.Ed. 718 (1799). If a federal court's jurisdiction is challenged, the burden is upon the party invoking such jurisdiction to demonstrate affirmatively that jurisdiction exists. *McNutt v. General Motors Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

Accordingly, to survive defendant's motion, the plaintiff must make at least a *prima facie* showing that jurisdiction is proper under the West Virginia long-arm statute.

## IV. *Discussion*

In approaching the jurisdictional question presented, the court is mindful of the fundamental principle that the United States is a union of sovereign states; the powers of one state may not be exercised so as to infringe upon the rightful prerogatives of another. The United States Court of Appeals for the Fourth Circuit reconfirmed this principle only a few weeks ago when it said: "[M]odern principles of personal jurisdiciton do not, and indeed under the Constitution could not, reorder the separate sovereignties of the states. A state's jurisdictional power remains territorial, within its boundaries over persons, properties and *activities* there." *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 943 (4th Cir.1994) (published).

Thus, while physical presence of a party within a state's boundaries is not in all cases necessary to support jurisdiction within that state over that party, some substitute for physical presence *within the forum state's boundaries* is required. Here, we have within West Virginia only the limited marketing activities of Carowinds described above, and, thus, the critical inquiry becomes: are those

limited marketing activities a sufficient foundation to support the exercise of jurisdiction over Carowinds? The court concludes that they are not.

█ It is often said that resolution of a question of jurisdiction over a non-resident defendant in a diversity case is a two-step inquiry. The court must first determine whether the state long-arm statute confers jurisdiction and then ask whether exercise of that jurisdiction is consistent with the constitutional mandates of due process. *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990). The West Virginia long-arm statute has been held to reflect a legislative intent to permit the exercise of jurisdiction over the non-resident defendant to the fullest extent consistent with the Due Process Clause of the Fourteenth Amendment. *Harman v. Pauley*, 522 F.Supp. 1130, 1135 (S.D.W.Va. 1981). Since the statute permits exercise of *in personam* jurisdiction to the limits of the Fourteenth Amendment, the normal two-step inquiry merges into one and the court is confronted solely with the constitutional issue. *Ellicott Machine Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).

█ Following the lead of the United States Supreme Court in *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Fourth Circuit Court of Appeals has drawn a distinction between "general jurisdiction" and "specific jurisdiction." When the court takes jurisdiction over a suit that arises out of the defendant's specific activities in the forum state, it exercises specific jurisdiction; when the court exercises jurisdiction over a suit that does not arise out of the defendant's activities in the forum state, the jurisdiction is called general jurisdiction. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 n. 2 (4th Cir.1993).

█ Looking at specific jurisdiction first, it seems clear that the plaintiffs have failed to establish any link between Carowinds' marketing and solicitation activities in West Virginia and their original trip to the amusement park in April of 1992 when Eva Faulkner was injured. The fact that she took a later trip in 1993 or 1994 in response to such advertising and solicitation is, at best, a factor to be considered on the question of general jurisdiction. Plaintiffs' own evidence fails to make a connection between Carowinds' West Virginia activities, limited as they were, and the specific trip to North Carolina during which Eva Faulkner was injured. Accordingly, the court concludes that the plaintiffs have failed to fulfill their burden of establishing a *prima facie* case to support the exercise of specific jurisdiction.

█ Significantly greater contacts are required between the defendant and the forum state to support the exercise of general jurisdiction than are necessary when jurisdiction is specific. *Nichols v. G.D. Searle & Co., supra,* at 1199. In fact, when the jurisdiction is general, the contacts are required to be "fairly extensive." *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971). The relationship between the Faulkners and Carowinds is analogous to the relationship between the parties in *Nichols* and *Ratliff* wherein the United States Court of Appeals for the Fourth Circuit failed to find a sufficient nexus to warrant the exercise of jurisdiction.

█ In *Nichols,* the defendant manufacturer of intrauterine devices was held to lack sufficient minimum contacts in Maryland for the exercise of general jurisdiction in spite of the fact that that manufacturer had between seventeen and twenty-one promotional representatives and two district managers in the state and kept automobiles, samples and promotional materials there. In *Ratliff,* a defendant drug company had qualified to do business in South Carolina, had appointed a resident agent for service of process there, and had five "detailmen" who lived in South Carolina and promoted defendant's products through personal contacts with doctors and pharmacists throughout the state. A second drug company named as a defendant in *Ratliff* had no representatives in South Carolina, but had mailed promotional literature to some 650 South Carolina doctors on its mailing list and sent mail solicitations to dealers and wholesalers in South Carolina. In both cases, the plaintiffs were allegedly injured by

ingestion or use of the defendants' products, and, yet, the Fourth Circuit held that the defendants' advertising and solicitation alone did not constitute the type of "continuous corporate operation" within the forum state that justifies the exercise of general jurisdiction over the non-resident defendant.

Consistent with *Nichols* and *Ratliff,* it seems clear that the promotional and marketing activities of Carowinds, established by the affidavits filed in this case, are insufficient to support the exercise of general jurisdiction by this court. Carowinds' contacts with West Virginia are less extensive than contacts of defendants with the forum states in *Nichols* and *Ratliff.*

The most recent decision of the United States Court of Appeals for the Fourth Circuit involving the exercise of *in personam* jurisdiction under long-arm statutes, *Lesnick, supra* at 945–46, sets forth a two-part test to be applied in such cases as follows:

> We hold the test to be applied in considering the reach of personal jurisdiction inquires whether (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into consideration such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental social policies.

*Id.*

*Nichols* and *Ratliff* teach us that, upon facts and circumstances such as those presented in this case, the first part of the *Lesnick* test is not met. This is certainly true in a case such as the present which depends upon concepts of "general" rather than "specific" jurisdiction. In such a case, to create "a substantial connection to the

forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections" of its laws, the plaintiff must engage in activities far more extensive than mail solicitations accompanied by an occasional visit to the forum state by a group sales representative. Since the plaintiffs have failed part one of the *Lesnick* test, it is unnecessary to proceed to the more specific inquiries called for in part two of that test.

### V. *Conclusion*

The court concludes that it lacks jurisdiction over the person of the defendant in this case.

A judgment order consistent with this Opinion shall be entered today dismissing this action without prejudice to plaintiffs' right to refile it in a forum where jurisdiction exists.[2]

---

**2.** This court is informed that the statute of limitations which would be applicable if this action were refiled in North Carolina is Section 1– 52(16) of the General Statutes of North Carolina which provides for a three-year period after the accident within which the case must be brought.