Tina Louise JEFFERS, Plaintiff,

v.

**WAL–MART STORES, INCORPORATED, et al., Defendants.**

No. CIV.A. 3:99–0274.

United States District Court, S.D. West Virginia, Huntington Division.

July 19, 2001.

Stuart Calwell, John H. Scaggs, Calwell & McCormick, Charleston, WV, for Plaintiff.

Kimberly E. Williams, McQueen, Harmon & Potter, L.C., Charleston, WV,

James D. McQueen, Jr., McQueen Harmon & Potter, Charleston, WV, Regenia L. Mayne, McQueen Harmon & Potter, Charleston, WV, R. Scott Long, Barbara A. Allen, Hendrickson & Long, Charleston, WV, Michael B. Victorson, Jackson & Kelly, Charleston, WV, Paul T. Farrell, Jr., Farrell, Farrell & Farrell, L.C., Huntington, WV, Joseph M. Farrell, Jr., Paul T. Farrell, Asst. U.S. Atty., Farrell, Farrell & Farrell, Huntington, WV, Mike A. Freye, Jenkins, Fenstermaker, P.L.L.C., Huntington, WV, Thomas E. Scarr, Michael A. Freye, Jenkins Fenstermaker, Huntington, WV, Anthony P. Tokarz, Phyllis M. Potterfield, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, Charles M. Love, III, Bowles Rice McDavid Graff & Love, Charleston, WV, Marc E. Williams, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, Dean T. Barnhard, Joseph G. Eaton, Barnes & Thornburg, Indianapolis, IN, Thomas E. Scarr, Mike A. Freye, Jenkins, Fenstermaker, P.L.L.C., Huntington, WV, Michael M. Fisher, Offutt, Fisher & Nord, Charleston, WV, James D. McQueen, Jr., McQueen Harmon & Potter, Charleston, WV, for Defendants.

## ORDER

CHAMBERS, District Judge.

Pending before the Court is the January 2, 2001 motion of Defendant C.L. Smith Container Company (C.L. Smith) to dismiss for lack of personal jurisdiction. Because exercise of personal jurisdiction by this Court over Defendant C.L. Smith would violate the Due Process Clause of the Fourteenth Amendment, as more thoroughly discussed below, the Court GRANTS Defendant's motion.

### I. Standard

Although the defendant is the moving party in a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the defendant has sufficient minimum contacts to sustain the Court's jurisdiction over the defendant. *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)). The *Mylan* court recognized that when:

> the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction. In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.

*Id.* at 60 (internal citations omitted). In this case, although no evidentiary hearing was held, Plaintiff conducted significant discovery over a period of nearly four months, and the filings for this motion alone amount to some 280 pages. As fully set forth below, the Court finds that, even drawing all reasonable inferences arising from the proof and resolving all factual disputes in Plaintiff's favor, Plaintiff has not borne the burden of proving a *prima facie* case of personal jurisdiction.

### II. Background

In her second amended complaint, Plaintiff Tina Louise Jeffers, an employee of Defendant Wal–Mart Stores, Inc., alleges that on April 10, 1997, she suffered harm as the result of exposure to chemicals when she was directed to clean up a spill of pesticide products in the Barboursville, West Virginia, Wal–Mart store's lawn and garden area. The products apparently had fallen off of a shelf and, when they hit the floor, had broken open and spilled their contents. On April 9, 1999, Plaintiff sued, *inter alia*, the manufacturers of the

pesticides products and of their containers on various products liability theories.

Defendant C.L. Smith was added to the suit by Plaintiff's second amended complaint on November 6, 2000. On January 2, 2001, C.L. Smith moved, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's amended complaint against it on the grounds that this Court lacks personal jurisdiction over C.L. Smith. Plaintiff filed her response on January 23, 2001 and, after additional discovery was had, her supplemented response on May 18, 2001. Defendant C.L. Smith filed its original reply on February 8, 2001 and its supplemented reply/motion on May 24, 2001.

The following facts, taken from the original and supplemental affidavits of Clarence L. Smith (Defendant C.L. Smith's president and owner), are apparently not disputed by Plaintiff, and, except as noted, the Court accepts them as established for the purposes of the pending motion. C.L. Smith is a Missouri corporation with its principal place of business in Saint Louis, Missouri. The company's primary business is the distribution of various containers, although it also occasionally manufacturers the containers it sells. C.L. Smith has never *directly* distributed its products to customers in West Virginia; furthermore, C.L. Smith does not know where its products are redistributed by its direct customers. In this case, C.L. Smith apparently sold its bottles to Defendant United Industries Corp., which then filled those bottles with pesticides and resold the full bottles through, *inter alia,* Defendant Wal–Mart Stores, Inc.

C.L. Smith has never been a domiciliary or resident corporation of West Virginia, it has never registered to do business in West Virginia, and it has never owned or controlled any corporations in West Virginia. C.L. Smith has never owned real or personal property in West Virginia, and it has never maintained bank accounts or telephone listings in West Virginia. The company has never employed any salespeople or other personnel in West Virginia, and it does not maintain an agent for service of process here. Finally, while C.L. Smith claims that it has never directly advertised in West Virginia, never solicited business here, and never distributed any products here, those claims are more in the nature of conclusions and are discussed more fully below.

### III. Analysis

Normally, determining the propriety of the exercise of personal jurisdiction over a non-resident defendant like C.L. Smith requires a two-step inquiry: (1) whether a statute authorizes service of process on the non-resident defendant, and (2) whether such service of process comports with the Due Process Clause. *See In re Celotex Corp.,* 124 F.3d 619 (4th Cir.1997); *Mylan Labs., Inc.,* 2 F.3d at 60; FED. R. CIV. P. 4. As the Fourth Circuit recognized in *In re Celotex,* though, "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary ... to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather, the statutory inquiry necessarily merges with the Constitutional inquiry." 124 F.3d at 627–28 (citations omitted). Accordingly, the only question before this Court is whether the exercise of personal jurisdiction over C.L. Smith would be consistent with the Due Process Clause.

In *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 941 (4th Cir.1994), the Fourth Circuit traced the history of Supreme Court jurisprudence on this question and observed that the exercise of personal jurisdiction over a person not physically pres-

ent in the forum state is consistent with the Due Process clause if that person "(1) ha[s] certain minimum contacts or ties with the forum state such that (2) maintenance of the suit does not offend traditional notions of fair play and substantial justice." 35 F.3d at 942 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).[1] Cases since *International Shoe*, the court noted, have further refined the two-pronged test:

> In [*Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)], the Court limited those "minimum contacts" necessary to confer jurisdiction to those activities of an out-of-state person by which the person "purposely avails itself of the privilege of conducting activities within the forum state." 357 U.S. at 253, 78 S.Ct. 1228. This occurs where the contacts "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting [*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)]) (emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. *Id.* at 476, 105 S.Ct. 2174.

35 F.3d at 942–43 (parallel citations omitted); *see also World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir.1997) (*ESAB I*).

### A. Specific and General Jurisdiction

Because the claimed injury in this case arose from Defendant C.L. Smith's alleged contacts with the forum state of West Virginia, this Court can look either to specific jurisdiction or general jurisdiction over C.L. Smith. *See ESAB I*, 126 F.3d at 623–24 (recognizing that general jurisdiction, needed where jurisdiction over defendant does not arise from that defendant's contacts with forum state, may be asserted over defendant whose activities in forum state have been "continuous and systematic," whereas specific jurisdiction may arise out of significantly lower threshold level of minimum contacts (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)))); *id.* at 624 ("The contacts related to the cause of action must create a 'substantial connection' with the forum state ..., although this connection need not be as extensive as is necessary for general jurisdiction.") (quoting *McGee*, 355 U.S. at 223, 78 S.Ct. 199); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993); *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 660 (4th Cir.1989).

Defendant C.L. Smith argues that the Court may not exercise specific jurisdiction over Defendant, but instead must base a finding of jurisdiction, if any, on general jurisdiction, "because the plaintiff cannot point to any specific activity of C.L. Smith [ ] within the forum state that led to the alleged injuries." (Supplemental Mem. in Supp. of M. to Dismiss at 13.) This facially circular conclusion, however, begs the primary question—whether C.L. Smith en-

---

1. For the purposes of this motion, the Court assumes that the allegedly injury-causing bottle or bottles were sold by Defendant C.L. Smith. Plaintiff argues as much factually (Pl.'s Resp. at Ex. A ¶ 1), and Defendant C.L. Smith concedes the same *arguendo* (Def. C.L. Smith's Mem. in Supp. of M. to Dismiss at 2; Def. C.L. Smith's First Reply at 2 & n. 1 (claiming possible spoliation of evidence); Depo. of Clarence L. Smith as unnumbered Ex. to Pl.'s Supplemental Resp. at 55.)

gaged in any activity in West Virginia— and assumes it to be answered in C.L. Smith's favor. The forum-state activity claimed by Plaintiff is C.L. Smith's manufacturing and/or supplying the bottle in question, a bottle which was undeniably physically present in West Virginia when it allegedly caused Plaintiff's injuries. Because the activity arose from C.L. Smith's West Virginia contacts asserted by Plaintiff as the basis for personal jurisdiction, that activity also supplies the basis, if any, for the exercise of specific jurisdiction and the accompanying lower contact threshold.

■ Defendant cites *Ratliff v. Cooper Labs., Inc.,* 444 F.2d 745 (4th Cir.1971), *Nichols, supra,* and *Faulkner v. Carowinds Amusement Park,* 867 F.Supp. 419 (S.D.W.Va.1994), for the proposition that the exercise of specific jurisdiction would be inappropriate in this case. These cases are easily distinguished. In the consolidated cases in *Ratliff,* the alleged injuries arose when plaintiffs took the defendants' medicines. The defendants' medicines were not manufactured, ingested, or (unlike the bottle in the case at bar) sold in the forum states. The Fourth Circuit therefore found the "lack of a 'rational nexus' between the forum state and the relevant facts surrounding the claims presented" such that specific jurisdiction would not have been appropriate. In *Nichols,* the court found that "[n]one of the plaintiffs reside[d] in [the forum state of] Maryland, and none of their causes of action arose there." 991 F.2d at 1198. Finally, in *Faulkner,* the plaintiff was injured when she fell at a North Carolina amusement park owned by the out-of-state defendant that had distributed some advertisements in West Virginia. Judge Faber concluded that, unlike the instant case, the plaintiff's "own· evidence fail[ed] to make a connection between [defendant's] West Virginia [forum state] activities, lim-ited as they were, and the specific trip to North Carolina during which [the plaintiff] was injured." 867 F.Supp. at 423.

## B. The First Prong: Minimum Contacts

Plaintiff cites the following, increasingly common, bases for finding that C.L. Smith had sufficient minimum contacts with West Virginia: the presence for sale in West Virginia of the allegedly defective C.L. Smith product (the bottle); a nationwide, toll-free telephone number; and a worldwide web-site.

### 1. Specific Jurisdiction

In 1958, Chief Justice Warren observed prophetically that "[a]s technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase." *Hanson,* 357 U.S. at 250–51, 78 S.Ct. 1228. The Chief Justice's comment presaged a "prolific controversy," *McGee,* 355 U.S. at 222, 78 S.Ct. 199, sparked by application of the "purposely avails" requirement to out-of-state corporations. The history of that controversy has been thoroughly described elsewhere, *see, e.g., Lesnick,* 35 F.3d at 941 (tracing personal jurisdiction from *Pennoyer v. Neff,* 95 U.S. 714, 5 Otto 714, 24 L.Ed. 565 (1877), to *Asahi Metal Ind. Co. v. Superior Court of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)); *Estes v. Midwest Prod., Inc.,* 24 F.Supp.2d 621 (S.D.W.Va.1998) (Goodwin, J.) (same, including history of Fourth Circuit cases), and will not be repeated in any great detail here.

In this case and in cases like it, the difficulty stems from attempting to reconcile the ***purposeful*** availment requirement with the holding in *World–Wide Volkswagen* that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the

stream of commerce with the *expectation* that they will be purchased by consumers in the forum State." 444 U.S. at 297–98, 100 S.Ct. 559 (emphasis added). In *Asahi,* two views emerged: the "Brennan view" and the "O'Connor view." Justice Brennan equated "purposefully" with something closer to "knowingly" and "concluded that *World–Wide Volkswagen* should not be read to require 'additional conduct' beyond simply placing a product in the stream of commerce with the expectation that it will be purchased in the forum state." *Lesnick,* 35 F.3d at 945. Justice Brennan felt that "[a]s long as a participant in this process is *aware* that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi,* 480 U.S. at 117, 107 S.Ct. 1026 (Brennan, J.) (emphasis added).

On the other hand, Justice O'Connor's opinion in *Asahi:*

> recognized that the language of *World–Wide Volkswagen* might be read to allow jurisdiction over any manufacturer which is aware that its product may be sold in the forum state. She noted, however, that some courts had rejected so broad an interpretation of *World–Wide Volkswagen,* reading it to require more of the defendant than mere knowledge of the product's entry into the forum state through the stream of commerce. She sided with those courts
>
> . . . .

*Lesnick,* 35 F.3d at 944. Justice O'Connor wanted to see more:

> Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi,* 480 U.S. at 112, 107 S.Ct. 1026. To Justice O'Connor, "purposeful" meant "intentional." [2]

Because both positions garnered only four votes each, no clear rule emerged from *Asahi,* and different circuits have adopted different positions. *See, e.g., Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 667 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987) (holding that when foreign seller heads distribution network, thus "realiz[ing] the much greater economic benefit of multiple sales in distant forums, of which the purchase by the particular buyer who has brought suit is merely one exam-

---

**2.** Immediately after holding that "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," 480 U.S. at 112, 107 S.Ct. 1026, might serve as the basis for the constitutional exercise of personal jurisdiction over an out-of-state defendant, Justice O'Connor remarked:

> Assuming, *arguendo,* that respondents have established Asahi's awareness that some of the valves sold to Cheng Shin would be incorporated into tire tubes sold in California, respondents have not demonstrated

any action by Asahi to purposefully avail itself of the California market. Asahi does not do business in California.... *It did not create, control, or employ the distribution system that brought its valves to California....* On the basis of these facts, the exertion of personal jurisdiction over Asahi by the Superior Court of California exceeds the limits of due process.

480 U.S. at 112–13, 107 S.Ct. 1026 (footnote and citations) (emphasis added).

ple," its activities in that role may "satisfy the purposeful availment test" and it may therefore be sued by injured buyer in buyer's forum); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir.1994) (adopting *Giotis* ).

While acknowledging that some courts had read "*World–Wide Volkswagen* ... for the proposition that personal jurisdiction may follow a product if it is delivered 'into the stream of commerce with the expectation that [it] will be purchased by consumers in the forum state,' " *Lesnick*, 35 F.3d at 944, the Fourth Circuit "read the holding of the case to be much narrower, requiring purposeful activity on the part of the defendants to establish a meaningful contact with the forum state," *id.* "The touchstone of the minimum contacts analysis," the court wrote, "remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Id.* at 945. The Fourth Circuit thus adopted Justice O'Connor's position that "purposeful" means "intentional" and that nothing short of intent will suffice:

> To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks.

*Id.*

The Circuit court then held:

that the test to be applied in considering the reach of personal jurisdiction inquires whether (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

35 F.3d at 945–46. In *In re Celotex*, the Court of Appeals further explained:

> A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if [ (1) ] the defendant has sufficient "minimum contacts" with the forum such that [ (2) ] requiring the defendant to defend its interests in the forum does not "offend 'traditional notions of fair play and substantial justice.' " Later cases have clarified that the minimum contacts must be "purposeful." This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws. Moreover, this "purposeful" requirement "helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum."

124 F.3d at 628 (citations and parallel citations omitted) (citing *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken*

*v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); *Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. 2174; *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228; *World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559); *see also ESAB I*, 126 F.3d at 622. While easily recited, this analysis is not sufficiently refined to permit mechanistic application, and each case presents a unique combination of facts that must be analyzed individually.

▌ In this case, there is no evidence that Defendant C.L. Smith purposefully availed itself of the benefits and protection of West Virginia law such that haling it into court here would comport with constitutional requirements. The presence in West Virginia of the bottle was not the *intentional* result of any conduct by C.L. Smith. Even if Plaintiff could make out that C.L. Smith was *aware* that an intermediate entity would purchase C.L. Smith's bottle for resale in West Virginia (*see, e.g.*, Supplemental Resp. at 3 (citing Clarence L. Smith Depo. at 48–49)), that fact alone is too attenuated to meet the requirements of purposeful availment, as interpreted by the Fourth Circuit.[3]

▌ Plaintiff cites *Estes* for the proposition that for the purposes of this analysis, the Court should treat final products and component parts differently. Plaintiff, relying on *Estes*, and Defendant, relying on *Lesnick* and *Isner v. Healthsouth Rehab. Corp.*, No. 6:97–1125 (S.D. W. Va. Mar. 14,

1998), engage in protracted explication of why the bottle in this case is either a final product or a component part, respectively. So much reliance is off target, however, because there simply is no *per se*, constitutionally significant difference between component parts and finished products. It would be unwise for any court to conclude that, *without more*, the Due Process Clause of the Fourteenth Amendment compels finding that a plastic bottle is somehow constitutionally different from its cap or its label.

Instead, in *Lesnick* and *Isner*, the courts found that the defendants had done nothing to purposefully avail themselves of the forum states' protection and that haling the defendants therein would be a constitutional surprise. In *Estes*, the court found that the defendant there *had* intentionally, purposefully conducted business in the forum state by employing a national retailer as its intermediary in a distribution network, and had thereby availed itself of the forum state's protection such that haling the defendant therein would *not* come as a constitutional surprise.

As noted, such distinctions are heavily dependant on the facts of each, individual case. In *Estes*, the facts surrounding the presence of the defendant's product in the forum state led the court to find purposeful availment; here, as in *Lesnick* and *Isner*, the facts do not support such a finding.[4] Whether the Fourth Circuit's

---

**3.** Plaintiff relies on a contract between C.L. Smith and the bottle purchaser to show both quality and quantity of contact and the existence of a product liability indemnification agreement, supported by a commercial general liability policy, obtained by C.L. Smith in favor of the bottle purchaser. Even if Plaintiff could establish that the contract was somehow related to the conduct giving rise to Plaintiff's injuries—something Plaintiff has not done, similar, but much stronger, arguments were made by the plaintiff and rejected by the Fourth Circuit in *Lesnick;* thus, the

contract in this case does not further Plaintiff's position.

**4.** There is no evidence in this case that Defendant C.L. Smith's product was specifically designed for the West Virginia market. Whether designing and/or manufacturing a product in order to comply with *national* requirements (*e.g.*, compliance with federal labeling, packaging, or trademark laws; use of American English labels; conformity with American consumer expectations as to package shape, size (in ounces, rather than liters),

rule stands the test of time, *see, e.g., Barone,* 25 F.3d at 615 ("In this age of NAFTA and GATT, one can expect further globalization of commerce, and it is only reasonable for companies that distribute allegedly defective products through regional distributors in this country to anticipate being haled into court by plaintiffs in their home states."), or whether instead the Supreme Court proves the commentators right, *see, e.g.,* Lori Elizabeth Jones, Note, Lesnick v. Hollingsworth & Vose Co.—*The Pure Stream of Commerce No Longer Flows Through the Fourth Circuit,* 29 U. RICH. L. REV. 421 (1995), remains to be seen. Nonetheless, for now and in this case, the Due Process clause would be "offended by requiring [C.L. Smith, the] non-resident[,] to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws." *In re Celotex Corp.,* 124 F.3d at 628 (citing *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228).

## 2. General Jurisdiction

There is no evidence in the record that Plaintiff's injuries were in any way connected either to Defendant C.L. Smith's toll-free telephone number or its worldwide web site; accordingly, these factors must be considered as grounds for the exercise of general personal jurisdiction.

Maintenance of a nationwide, toll-free telephone number and a world-wide web site certainly constitute *some* contact with every state. *See generally Am. Civil Lib-*

*erties Union v. Reno,* 929 F.Supp. 824, 828–31 (E.D.Pa.1996) (describing access to and use of Internet). Defendant C.L. Smith also apparently advertised in at least one national trade journal. (Resp. to Interrogs. # 2 attached to Supplemental Resp. at P.'s Ex. B.; Newby Affid. at 14 (Defendant C.L. Smith placed advertisement in *Closures & Containers* magazine).)

Most courts to consider the effect that a defendant's a web site has on that defendant's purposeful contacts with a forum state have adopted the "sliding scale approach" from *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997). *See, e.g., Remick v. Manfredy,* 238 F.3d 248, 259 n. 3 (3rd Cir.2001) (approving of district court analysis using *Zippo* ); *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir.1999) (adopting *Zippo* court analysis); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir.1997) (same); *Virtuality L.L.C. v. Bata Ltd.,* 138 F.Supp.2d 677, 684 (D.Md.2001); *Brown v. Geha–Werke GmbH,* 69 F.Supp.2d 770 (D.S.C.1999); *Roche v. Worldwide Media, Inc.,* 90 F.Supp.2d 714, 717 (E.D.Va.2000); *ESAB Group, Inc. v. Centricut, LLC,* 34 F.Supp.2d 323 (D.S.C.1999) (*ESAB II* ).

■■■■ At one end of that scale are defendants who maintain "passive" web sites "that do[ ] little more than make information available to those who are interested in it," *Zippo,* 952 F.Supp. at 1124. *See Bensusan Rest. Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). The *Zippo* court found that such web sites were "not

*etc.*), could be said to constitute purposeful availment of the *entire nation* as a market, and thereby of every state, while not decided by the Fourth Circuit, would seem to be inconsistent with the result reached by that court in *Lesnick. Compare Hollingsworth & Vose Co. v. Connor,* 136 Md.App. 91, 764 A.2d 318 (2000) *with In re Perrier Bottled Water Litigation,* 754 F.Supp. 264 (D.Conn.1990)

("Perrier took extensive, affirmative steps to send its product into all fifty states. Unlike Asahi, Source Perrier designed its product specifically for the U.S. market, which, of course, includes Pennsylvania, and Connecticut."). Although implicated here, neither party raised this issue directly, so the Court reaches no conclusion in that regard.

grounds for the exercise of personal jurisdiction." *Id.* At the opposite end are defendants who conduct business over their web sites and engage in repeated contact with the forum state. In those cases, for example, "[i]f the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id.* at 1124 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996)). The *Zippo* court noted that at the middle of this spectrum lie certain "interactive" web sites "where a user can exchange information with the host computer," and where "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996)). This common-sense approach looks to the quality and quantity of the defendant's purposeful Internet contact with the forum state to determine the reasonableness of exercising personal jurisdiction over the out-of-state defendant based at least in part on that contact.

 In the instant case, there is no evidence that the Defendant C.L. Smith's web site was anything more than a passive web site, advertising Defendant's product line and typical sales area,[5] and providing contact information. Such activity falls at the very bottom of the scale of web site interactivity, and thus falls far short of the level of contact needed to form the basis for exercising personal jurisdiction over C.L. Smith. The use of a nationwide toll-free number and the occasional advertising in national trade journals do not add enough to Defendant's conduct to raise it above the constitutional bar. The Court recognizes that at least a few courts have held to the contrary. *See Superguide Corp. v. Kegan*, 987 F.Supp. 481, 486–87 (W.D.N.C.1997) (magistrate judge's recommendation); *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn.1996). Their positions are not widely followed, however. More importantly, they are clearly inconsistent with the Fourth Circuit's position on how purposeful and significant conduct must be to satisfy Due Process requirements, and as such cannot form the basis for a finding that Defendant C.L. Smith engaged in continuous or systematic purposeful contact with West Virginia.

## C. The Second Prong: Fair Play and Substantial Justice

 Having found that Plaintiff has failed to establish even a *prima facie* case that Defendant C.L. Smith has minimum contacts with West Virginia, it is unnecessary to consider the second prong of the due process requirement, *i.e.*, that maintenance of the suit does not offend traditional notions of fair play and substantial justice. It is true that the fair play "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174. They cannot, however, make up for

---

5. Plaintiff makes much of a web page "in which the State of West Virginia is in shaded relief" (Supplemental Resp. at 4) and from which visitors to the web site and the Court are supposed to "infer ... that C.L. Smith is directing its marketing and advertising toward West Virginia ...." (*id.*). It is obvious to the Court that this claim mischaracterizes a simple map of the country, used as a graphic prop, in which only Missouri, Arkansas, and Tennessee were highlighted. The representation of West Virginia, like that of the other forty-seven states, fades into the background and cannot be reasonably said to support conduct directed toward West Virginia.

a nearly complete lack of purposeful contact. *See, e.g., Brown,* 69 F.Supp.2d at 778 ("even if these factors weighed in favor of the reasonableness of asserting personal jurisdiction in this case, the court has been cited no cases holding that such a finding obviates the necessity of establishing at least minimum contacts, even if those contacts are slim. Because this court has found a complete paucity of minimum contacts, the reasonableness factors of the second prong of the Due Process analysis cannot assist Plaintiff in establishing personal jurisdiction."); *Regent Lighting Corp. v. Am. Lighting Concept, Inc.,* 25 F.Supp.2d 705, 712–13 (M.D.N.C. 1997) ("Because the exercise of personal jurisdiction over Defendants does not satisfy the first prong of the *Lesnick* test requiring a substantial connection with the forum state, the court need not consider the fairness concerns under the second prong of the test.").

## IV. Conclusion

For the reasons discussed, the Court **GRANTS** Defendant C.L. Smith's motion to dismiss. Although the Court does not decide the issue here, C.L. Smith is apparently subject to personal jurisdiction at least in Missouri, and Plaintiff is free to refile her cause of action wherever C.L. Smith would be properly before the court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party and to publish this Opinion at www.wvsd.uscourts.gov.