**FALLON LUMINOUS PRODUCTS CORP., Plaintiff,**

v.

**MULTI MEDIA ELECTRONICS, INC., Defendant.**

No. C.A.6:04–2049–20.

United States District Court,
D. South Carolina,
Greenville Division.

Nov. 4, 2004.

John B Hardaway, III, Stephen J Shaw, Nexsen Pruet Jacobs and Pollard, Greenville, SC, for Plaintiff.

Donald A Harper, Harper Law Firm, Greenville, SC, R Patrick Smith, Harrison White Smith Hayes and Coggins, Spartanburg, SC, for Defendant.

## ORDER

HERLONG, District Judge.

This matter is before the court on Multi Media Electronics, Inc.'s ("MME") motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court denies MME's motion to dismiss for lack of personal jurisdiction and improper venue.

### I. STATEMENT OF THE FACTS

Fallon Luminous Products Corp. ("Fallon") is a South Carolina corporation that

"manufactures and sells illuminated and neon signs." (Compl. ¶¶ 1, 5.) MME is a Delaware corporation headquartered in Farmingdale, New York that "markets and sells a variety of novelty goods and lighting products." (Def.'s Mem. Supp. Mot. Dismiss at 1 (Decl. of Bernhardt ¶ 2).) Fallon alleges that MME has infringed its patent for a luminous electric sign ("neon sign"), U.S. Patent No. 5,533,286 ("286 patent"), by selling identical or substantially similar neon signs to Wal–Mart Stores, Inc. ("Wal–Mart") for distribution throughout the nation. (Compl. ¶ 8.) Fallon purchased one of MME's allegedly infringing neon signs at a Wal–Mart store in Spartanburg, South Carolina. (Pl.'s Mem. Opp'n Mot. Dismiss (Aff. of Devin Hinson ¶¶ 2, 3, 4).) MME's trademark is located on five sides of the box containing the neon sign, and MME's company information and website address is next to the UPC code. (*Id.* (Aff. of Devin Hinson ¶¶ 5, 6).)

MME alleges that Fallon's complaint contains no allegations to support a finding of personal jurisdiction over MME in South Carolina. (Def.'s Mem. Supp. Mot. Dismiss at 2.) MME asserts that it does not own real property or have a place of business in South Carolina. (*Id.* (Decl. of Bernhardt ¶¶ 4, 5).) Further, MME does not pay South Carolina taxes and does not maintain a bank account in South Carolina. (*Id.* (Decl. of Bernhardt ¶¶ 6, 7).) MME does not have a registered agent for service of process in South Carolina. (*Id.* (Decl. of Bernhardt ¶ 8).) In addition, MME has not sold or delivered any allegedly infringing neon signs into South Carolina. (Def.'s Mem. Supp. Mot. Dismiss at 6 (Decl. of Bernhardt ¶¶ 24, 26).) According to MME, it sells the allegedly infringing neon signs to Wal–Mart, and Wal–

Mart decides which stores will offer the allegedly infringing neon signs for sale. (*Id.* (Decl. of Bernhardt ¶¶ 19, 20, 21).) The neon signs are manufactured in China and shipped to the United States. (*Id.* (Decl. of Bernhardt ¶ 25).) MME asserts that Wal–Mart's sale of neon signs in South Carolina is insufficient to establish a basis for personal jurisdiction over MME.

## II. Discussion of the Law

### A. Personal Jurisdiction

■ "When a court's personal jurisdiction over a defendant is contested, the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction." *ESAB Group, Inc. v. Centricut, LLC,* 34 F.Supp.2d 323, 328 (D.S.C. 1999). The plaintiff need only make a prima facie showing of jurisdiction where the court is addressing the jurisdictional question on the basis of a written motion of the parties. *Id.* Because this is a patent infringement case, Federal Circuit law, rather than Fourth Circuit law, controls the analysis of jurisdiction. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995). In determining whether personal jurisdiction exists over a defendant, the court must apply a two-step analysis. *See Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1358 (Fed.Cir.1998). First, the court must determine whether the forum state's long-arm statute provides a basis for asserting jurisdiction over the defendant. Second, the court must determine if the assertion of such jurisdiction comports with due process. *See id.*

### 1. Long–Arm Statute

■ When a suit arises out of a defendant's activities within the forum state, a court may exercise specific jurisdiction.[1]

---

1. States may also assert *general jurisdiction* over a defendant when the plaintiff's cause of action does not arise from the defendant's contacts with the forum state. Plaintiff must prove that the defendant's contacts are "continuous and systematic" to support the exer-

See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 & 473 n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Federal Circuit defers to the forum state's highest court in interpreting the long-arm statute. See HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307 (Fed.Cir.1999). South Carolina asserts specific jurisdiction over defendants pursuant to its long-arm statute. See Sheppard v. Jacksonville Marine Supply, Inc., 877 F.Supp. 260, 264 (D.S.C. 1995). The South Carolina Supreme Court has interpreted South Carolina's long-arm statute to extend to the constitutional limits imposed by the due process clause. See id. at 265. Therefore, it follows that the two-step analysis collapses into due process. See id. Under this analysis, the plaintiff must show that the defendant had sufficient "minimum contacts" with South Carolina and that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (internal quotation omitted).

### 2. Due Process

The due process analysis consists of two branches: the "minimum contacts" branch and the "fair play and substantial justice branch." Id.

#### a. Minimum Contacts

■ In a patent infringement case, the Federal Circuit has established a three-prong test for determining whether minimum contacts exist: "(1) whether the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to

those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." HollyAnne Corp., 199 F.3d at 1307–08.

■ The first prong of the minimum contacts test is whether MME purposefully directed its activities at South Carolina. MME argues that it simply placed the neon signs into the stream of commerce and did not purposefully direct them at South Carolina. (Def.'s Mem. Supp. Mot. Dismiss at 6.) The court disagrees.

> If the sale of a product of a manufacturer or a distributor ... is not simply an isolated occurrence, but arises from the efforts of the [defendant] to serve, directly or indirectly, the market for its product ..., it is not unreasonable to subject it to suit .... [T]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed.Cir.1994) (quoting World–Wide Volkswagen Corp., 444 U.S. at 297–98, 100 S.Ct. 559). In Beverly Hills, the Federal Circuit found that the defendants, the manufacturer and distributor of the allegedly infringing fans, had purposefully directed their activities at the forum state in a similar case to the case at bar. 21 F.3d at 1566. The plaintiff alleged that the defendants were subject to jurisdiction because the defendants shipped allegedly infringing fans through an intermediary into Virginia through an established distribution channel. Id. The

---

cise of general personal jurisdiction over the defendant. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In this case, Fallon admits that there is no general

jurisdiction over MME. (Pl.'s Mem. Opp'n Mot. Dismiss at 4.) Therefore, if jurisdiction exists, it is specific in nature and the court need not address general jurisdiction.

defendants argued there was no evidence that the shipments "into Virginia were purposeful or knowing." *Id.* at 1564. However, the court found the plaintiff had established that the "commercial relationship with Builder's Square was ongoing, and obviously intentional," because it was "undisputed that at least fifty-two ... fans were present in Virginia bearing [the distributor's] warranty, reflecting an ongoing relationship with the Virginia retailer and customers." *Id.* at 1564. Based on this and other evidence, the court concluded that "it can be presumed that the distribution channel formed by defendants and Builder's Square was intentionally established, and that defendants knew or reasonably could have foreseen, that a termination point of the channel was Virginia." *Id.* Specifically, the Federal Circuit held that exercising personal jurisdiction over the defendants was proper because the

> necessary ingredients for an exercise of jurisdiction consonant with due process [were present]: defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there.

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed.Cir.1994).

In another case, *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, the United States District Court for the Western District of Virginia found that a Japanese manufacturer of an allegedly infringing electrical device had purposefully directed its activities at Virginia by intentionally shipping its products through a wholly-owned American subsidiary into the state. 169 F.Supp.2d 530, 534–37 (W.D.Va.1999). The manufacturer argued that it did not know where its subsidiary shipped its al-legedly infringing electrical device. *Id.* at 534. Finding the manufacturer's "ostrich-like stance ... untenable under the law," the court noted that a reasonable inference could be drawn "that the sale of a large number of devices to a firm with a nationwide distribution network will generally result in the sale—or at least the use—of one of those devices in the forum state." *Id.* (internal quotation omitted).

MME has purposefully directed its activities at South Carolina because it sold the allegedly infringing neon signs to Wal-Mart, which distributes products through an established nationwide distribution channel. Fallon alleges in its complaint that

> [o]n or about April 2004, plaintiff discovered that neon signs manufactured by defendant were identical to or substantially similar to the design of the '286 patent. Upon information and belief, neon signs manufactured by defendant were offered for sale or sold nationwide through Wal-[M]art stores and labeled as 'NEON F/X OPEN', Model No. 16818.

(Compl.¶ 8.) The inference can be drawn that "nationwide" includes South Carolina.

MME relies, in part, on a non-patent case, *Jeffers v. Wal–Mart Stores, Inc.*, to support its argument that it is not subject to personal jurisdiction in South Carolina. 152 F.Supp.2d 913 (S.D.W.Va.2001). In *Jeffers*, the defendant distributor sold bottles to a defendant pesticide company. The pesticide company, in turn, filled the bottles with pesticides and sold the product to Wal–Mart for sale. *Id.* at 916. The court found that the bottle manufacturer had not intentionally conducted business with the forum state and, therefore, had not purposefully directed its activities at the forum state. *Id.* at 916, 921. The court disagrees that this case supports MME's argument because unlike in *Jef-*

*fers*, in this case, MME sold the allegedly infringing neon signs directly to a national retailer, Wal–Mart, which has a known nationwide distribution chain. Therefore, MME intentionally established a nationwide distribution network.

In addition, MME argues that *Beverly Hills* is distinguishable from this case because "MME does not deliver or ship any accused product into the forum State of South Carolina and that MME does not provide any input regarding which Wal–Mart stores the [neon sign] is offered for sale." (Def.'s Reply Mem. at 2 (Decl. of Bernhardt ¶¶ 21, 24).) Notably, the defendants in *Beverly Hills* did not ship the fans directly into Virginia, but instead purposefully sold the fans in Virginia through an intermediary. 21 F.3d at 1563. As noted by MME, "Wal–Mart has 1,478 discount stores located throughout the United States."[2] (Def.'s Reply at 3.) MME intentionally sells the allegedly infringing neon signs to Wal–Mart knowing that it has stores throughout the nation. By selling the neon signs to Wal–Mart, a likely destination of the neon signs is one of the eighteen Wal–Mart discount stores or forty-two Wal–Mart supercenters in South Carolina. Further, Fallon confirmed the presence of MME's allegedly infringing neon signs in South Carolina by purchasing one of them at a Spartanburg, South Carolina Wal–Mart. Based on the foregoing, the court finds that MME purposefully directed the allegedly infringing neon signs at South Carolina by placing them in the stream of commerce through an established distribution chain.

With respect to the second prong of the minimum contacts test, whether the claim arises out of or is related to the defendant's activities, Fallon's claim that MME infringes its patent is related to MME's activity of selling allegedly infringing neon signs to Wal–Mart for distribution throughout the United States, including South Carolina. (Compl. ¶¶ 8, 13, 14.) Therefore, the second prong is easily satisfied. The third prong of the minimum contacts test, whether the assertion of personal jurisdiction is reasonable and fair, has also been met. Because the third prong overlaps with the second part of the due process test, the court will address it below.

### b. Fair Play and Substantial Justice

 Irrespective of the court's finding that MME has minimum contacts with South Carolina, the court must still examine whether the exercise of jurisdiction over MME would offend the notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. 2174.

 The court must look at several factors when evaluating the substantial justice prong of the due process test. These factors include: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the efficient resolution of controversies as between states; and (5) the shared interest of the several states in furthering substantive social policies. *See Asahi Metal Indus. Co. v. Superior*

---

**2.** While MME's representation regarding the number of Wal–Mart discount stores is technically correct, MME fails to note that Wal–Mart has forty-two supercenters located in South Carolina which could also offer the allegedly infringing neon signs for sale. (Def.'s Reply Mem. Ex. A (Wal–Mart Annual Report).)

*Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

After evaluating the factors listed above, the court finds that in light of the principles of fair play and substantial justice, exercising personal jurisdiction over MME would not violate due process for three reasons. First, the burden on MME of litigating in South Carolina is minimal. MME is located in New York, which is not an overwhelming distance from Greenville, South Carolina. Second, the distance MME is forced to travel does not outweigh South Carolina's compelling interest of "discouraging injuries that occur within the state." *Beverly Hills,* 21 F.3d at 1568. Finally, South Carolina "also has a substantial interest in cooperating with other states to provide a forum for efficiently litigating plaintiff's cause of action." *Id.* Based on these reasons, exercising jurisdiction over MME does not offend notions of fair play and substantial justice. Therefore, the exercise of specific jurisdiction over MME does not violate due process.

**B. Improper Venue**

█ MME also moves to dismiss the complaint for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. In a patent infringement case, venue "includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced." *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583 (Fed.Cir.1990). The court has personal jurisdiction over MME. Therefore, venue is proper in this district.

Therefore, it is

**ORDERED** that MME's motion to dismiss for lack of personal jurisdiction is denied. It is further

**ORDERED** that MME's motion to dismiss for improper venue is denied.

**IT IS SO ORDERED.**